PARCELLS *v.* BURTON

1. COVENANTS—REAL PROPERTY—RESTRICTIONS—RESIDENTIAL USAGE.
   The right of privacy for homes is valuable and restrictions for residential purposes, if clearly established by proper instruments, is favored by public policy and vigorously enforced by specific mandates from the courts.

2. APPEAL AND ERROR—EQUITY—DE NOVO REVIEW.
   Cases involving equity jurisdiction are reviewed *de novo* by the Court of Appeals, but it will not ordinarily reverse the lower court, where there is evidence and testimony to support its findings, unless justice demands or the evidence preponderates the other way.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Covenants § 182.
[2] 5 Am Jur 2d, Appeal and Error § 703.
[3] 20 Am Jur 2d, Covenants §§ 169, 173.
Conveyance "subject to" restrictions set forth in a recorded or other indicated instrument as imposing the restrictions on the land conveyed. 84 ALR2d 780.
[4, 5] 20 Am Jur 2d, Covenants §§ 281, 282.
[6] 20 Am Jur 2d, Covenants § 299.
Validity, construction, and effect of restrictive covenant requiring consent of third person to construction on lot. 19 ALR2d 1274.

3. COVENANTS—REAL PROPERTY—RESTRICTIONS—RECIPROCAL NEGA-
TIVE EASEMENT.

Trial court's finding that a reciprocal negative easement was
created in defendant's property which prevented her from
permitting construction of a second residence on part of her
land was not erroneous where the evidence established that
the common grantor of the five parcels of land had included
restrictions in the other four deeds which limited construction
to one residence per parcel and, while not including this
express restriction in defendant's deed, had made her parcel
"subject to restrictions of record" and where defendant had
constructive notice, from the physical layout of the area, that
a common plan was being carried out.

4. COVENANTS—RESTRICTIONS—ENFORCEMENT—CHANGE IN NEIGHBOR-
HOOD.

A change in the character of a neighborhood, to be so exten-
sive as to make previously established restrictions unenforce-
able, must destroy the value of the restrictions for the par-
ticular plaintiff.

5. COVENANTS—RESTRICTIONS—ENFORCEMENT—CHANGE IN NEIGHBOR-
HOOD.

Changes in defendant's neighborhood did not make a common
grantor's restriction to one residence per parcel of land un-
enforceable where evidence that the parcels later sold by
the common grantor were smaller than defendant's and four
other original parcels, and that the land across the street
from plaintiff is undeveloped, is not sufficient to show that
the grantor's original residential plan as established in the
five original tracts has been abandoned, or that changes in
the neighborhood have been so extensive as to render the
general plan unenforceable.

6. COVENANTS — REAL PROPERTY — RESTRICTIONS — ENFORCEMENT
—BENEFIT TO NEIGHBORS.

Enjoining defendant from constructing a second residence on
her property, which is subject to a reciprocal negative ease-
ment allowing only one house on a parcel of several acres,
is of appreciable economic and esthetic value to plaintiff
neighbors where plaintiffs purchased their property relying
on multi-acreage development and where, if defendant could
build the second residence, plaintiff's parcel would be an
isolated, solitary large parcel that would be difficult to divide
because of the terrain.

Appeal from Oakland, Philip Pratt, J.   Submitted
Division 2 October 8, 1969, at Lansing.   (Docket No.
6,471.)   Decided December 4, 1969.

Complaint by Charles W. Parcells and Beulah H.
Parcells against Alyce H. Burton and Robert and
Betty Costello to enjoin the defendants from con-
structing a second residence on property purchased
by the Costellos from Alyce Burton.   Judgment for
plaintiffs.   Defendant appeals.   Affirmed.

*David C. Pence,* for plaintiffs.

*McTigue, Howarth & McTigue,* for defendant.

Before:   QUINN, P. J., and BRONSON and T. M.
BURNS, JJ.

T. M. BURNS, J.   Plaintiffs filed this action to
enjoin defendants Robert and Betty Costello from
constructing a residence on property they purchased
from defendant Alyce H. Burton, and to enjoin the
latter from permitting such construction.   The the-
ory of plaintiffs' action was that the residence, if
built, would violate a restriction on the property
limiting construction to one house per lot.   Plain-
tiffs had relief below and Alyce H. Burton appeals.
Defendants Costello do not appeal.

The land in question is one of five parcels along
the north side of Peach Tree Lane, north of Roch-
ester, Michigan.   Title to each of the five parcels
originated with George Knorr, a land developer and
builder.   Some time before 1946, Mr. Knorr acquired
240 acres of land which included the five parcels.
The trial court found that in developing this land,
it was Knorr's original intent to meet a market
demand for large-acreage parcels with a rural at-

mosphere. To that end he developed Peach Tree
Lane, an undedicated street, and conveyed by metes
and bounds description the five parcels above re-
ferred to, which vary in size from 3.58 acres to 5.91
acres.

Four of the five deeds by which Knorr conveyed
these parcels contained a restriction limiting con-
struction to one residence per parcel. Although the
other deed to defendant's predecessor in title, Johns,
did not have the restrictions attached, it did indi-
cate that it was "subject to restrictions of record."
This deed indicated, however, that it was given to
correct an erroneous description in a prior unre-
corded deed. When Johns conveyed to Webber, the
deed contained the same restriction that appears in
the other four deeds from Knorr. However, when
Webber conveyed to H. E. Burton and Alyce H.
Burton on September 6, 1958, the deed recited only
"subject to restrictions of record".

On January 11, 1966, H. E. Burton conveyed to
defendant, his wife, approximately one and one-half
acres of the three and one-half acres owned by the
Burtons. Early in 1967, defendant agreed to sell
this one and one-half acres to the Costellos for a
residence site which is adjacent to plaintiffs' prop-
erty.

Although the balance of the Knorr property that
has been developed does not follow the original
intent of the developer, the restriction he placed in
effect as to the five parcels north of Peach Tree
Lane created a neighborhood that made it apparent
that a plan was being carried out in the area. De-
fendant and her predecessors in title had notice of
the restriction from the physical layout of the resi-
dences on Peach Tree Lane.

The first issue which this Court must consider is
whether a valid negative reciprocal easement was

created on the property owned by defendant. The case of *Sanborn* v. *McLean* (1925), 233 Mich 227, is the touchstone case in Michigan law of reciprocal negative easements. In *Sanborn,* defendants attempted to erect a gas station on a lot which contained no restrictions in the chain of title prohibiting such use. The Supreme Court, however, held that under the theory of reciprocal negative easements, such use could be enjoined. Important to the Court's decision was the fact that a portion, at least, of the subdivision was owned by the grantor, who had a general plan of residential development, as was evidenced by restrictive covenants in some, but not all, deeds from this grantor to others. Of course, the easement remained effective at the time of the purchase by defendants, said the Court, only if they had knowledge, actual or constructive, thereof.

It is true that Michigan applies a strict construction upon restrictions placed upon the alienation of property. *Sampson* v. *Kaufman* (1956), 345 Mich 48. However,

"Restrictions for residence purposes, if clearly established by proper instruments are favored by definite public policy. The Courts have long and vigorously enforced them by specific mandate. This Court has expressly recognized that the right of privacy for homes is a valuable right." *Johnstone* v. *Detroit, Grand Haven & Milwaukee Railway Co.* (1928), 245 Mich 65, 74.

Cases involving equity jurisdiction are reviewed in the Court of Appeals *de novo,* but ordinarily the Court of Appeals will not reverse the lower court where there is evidence and testimony to support the finding of the lower court, unless justice demands or the evidence preponderates the other way. *Osius*

v. *Dingell* (1965), 375 Mich 605, 611, 612; *Tobia* v.
*Johns* (1969), 16 Mich App 324.

We find that the evidence supports the conclusion
reached by the lower court that the mandates of
*Sanborn* have been adequately satisfied and that the
intent of the common grantor was to create a gen-
eral plan upon at least the five parcels in question
and that defendant had constructive notice of this
plan.

Turning to the second issue which is whether there
have been changes in the neighborhood which are
so material and extensive as to render the general
plan unenforceable, we find that, under the particu-
lar circumstances of this case, the changes in the
neighborhood are not so extensive as to render the
general plan unenforceable. See *Feldman* v. *Court*
(1966), 5 Mich App 160.

The law is clear that a change in the character
of the neighborhood to be so extensive as to make
the restrictions unenforceable must destroy the
value of the restrictions to the particular plaintiff.
*Taylor Avenue Improvement Ass'n* v. *Detroit Trust
Co.* (1938), 283 Mich 304, and cases cited therein.

Although the size of lots later sold by the common
grantor were smaller than those envisaged by him
when the original five tracts were conveyed, the land
across the street from plaintiffs' home remains un-
developed and there are no signs of abandonment
of the residential plan as established by the five
tracts in question except for defendant's effort to
divide the Burton property. *Morgan* v. *Matheson*
(1961), 362 Mich 535. For, as the lower court said:

"[T]he character of the neighborhood has not
changed in the case at bar particularly as it affects
the immediate neighborhood. The parcels here are
screened and protected and removed in distance and
view from other areas. Moreover, the diminution

in lot size is not so severe as to be oppressive and the construction throughout has been of exceptionally high standards."

Further, in response to defendant's claim that no benefit inures to plaintiffs, this Court adopts the lower court opinion to the extent that it finds that plaintiffs purchased their property relying on multi-acreage development.

"Their home is designed to take advantage of their land. They wish to retain the natural state and are dismayed by the prospect of a view of the rear of another residence though their family-room windows. In addition, the allowance of divided parcels could well result in leaving them as an isolated, solitary large acreage parcel, with great difficulty because of the terrain if they attempted division. These aesthetic and economic factors provide a benefit of appreciable proportions."

Finally, defendant relies heavily on *Gomah* v. *Hally* (1962), 366 Mich 31, which she contends is directly in point. However, review of the *Gomah* case reveals that it is distinguishable, as the plaintiff there was estopped from enforcing the restrictions by his own conduct. We find no basis for estoppel here.

Affirmed, with costs to plaintiffs.

All concurred.