BROOKSHIRE-BIG TREE ASSOCIATION v ONIEDA TOWNSHIP

Docket No. 190488. Submitted March 5, 1997, at Lansing. Decided August 22, 1997, at 9:05 A.M.

Brookshire-Big Tree Association, an association of residents of the Brookshire Estates subdivision and a related subdivision, brought an action in the Eaton Circuit Court against Oneida Township, Four M's Partnership, and others, seeking an order vacating the preliminary approval of the plat of a subdivision adjacent to Brookshire Estates called Brookshire No. 2 that was granted by the township and the Eaton County Road Commission, and an injunction preventing Four M's from constructing a road across lot 12 in the Brookshire Estates subdivision for the purpose of providing access to the Brookshire No. 2 subdivision. Four M's is the owner of Brookshire No. 2 and lot 12. Lot 12 is subject to restrictive covenants requiring that it be used only for residential purposes and that only a single-family dwelling may be constructed on it. The majority of the lots in the Brookshire Estates subdivision are subject to the same restrictions. The court, Thomas S. Eveland, J., granted the plaintiff's motion for summary disposition, finding that the plat for Brookshire No. 2 had been approved improperly because it removed lot 12 from the Brookshire Estates subdivision and transferred it to the Brookshire No. 2 subdivision without the procedures for replatting a subdivision provided in the Subdivision Control Act, MCL 560.101 *et seq.*; MSA 26.430(101) *et seq.*, having been followed. Four M's appealed from the order granting summary disposition, alleging that it could unilaterally agree to the replat of lot 12 without the approval of the remaining owners of lots in the Brookshire Estates subdivision.

The Court of Appeals *held*:

1. The Subdivision Control Act provides that all the owners of lots that are to be part of the replat must agree in writing to the replat and that a replat is the process of changing the boundaries of a recorded subdivision plat or part thereof.

2. All the owners of the lots constituting the Brookshire Estates subdivision must agree in writing to the replat because the boundaries of the subdivision will change if lot 12 is annexed by Brookshire No. 2. Because Four M's did not obtain the agreement of all

the lot owners of the Brookshire Estates subdivision, Four M's did not satisfy the requirements of MCL 560.104; MSA 26.430(104).

3. Review of Four M's allegation that the court erred in refusing to grant Four M's permission to build a road across lot 12 would be inappropriate because the issue was not raised in the statement of questions presented.

Affirmed.

TAYLOR, J., concurring, stated that affirmance of the trial court's order was also appropriate on the basis that the restrictions in the deeds for the pertinent lots in the Brookshire Estates subdivision were in the nature of negative reciprocal easements.

PROPERTY — SUBDIVISION CONTROL ACT — WORDS AND PHRASES — REPLAT.

The Subdivision Control Act provides that a "replat" is the process of changing, or the map or plat that changes, the boundaries of a recorded subdivision plat or part thereof; the act generally requires court action to effectuate the replat of a subdivision, but also provides an exception that requires all the owners of the lots that are to be part of the replat to agree in writing to the replat in order to effectuate the replat of a subdivision without court action; the owner of a single lot in a subdivision cannot effectuate the replatting of that lot by unilaterally "agreeing" to the replat without the agreement of the remaining property owners (MCL 560.102[u], 560.104[a]; MSA 26.430[102][u], 26.430[104][a]).

*Reid and Reid* (by *John R. Fifarek*), for Brookshire-Big Tree Association, Ronald and JoAnne Flitton, John and Shirley Matthews, William and Patricia Alexander, Donald and Carla Tomanica, Manley Dayton, Richard and Anita Cote, Devin and Kathleen Koski, and Fredrick and Jackie Kebler.

*Glassen, Rhead, McLean, Campbell & Bergamini* (by *Neil A. McLean*), for Oneida Township.

*Abood, Abood & Rheaume, P.C.* (by *William E. Rheaume*), for Four M's Partnership.

Before: FITZGERALD, P.J., and MACKENZIE and TAYLOR, JJ.

PER CURIAM. In this case involving the Subdivision Control Act, MCL 560.101 *et seq.*; MSA 26.430(101) *et seq.*, Four M's Partnership (hereafter defendant) appeals as of right the order of the circuit court granting summary disposition in favor of plaintiff. We affirm.

The facts of this case are uncontested. Brookshire Estates is a small subdivision abutting Saginaw Highway in Oneida Township. The thirty lots comprising the subdivision are situated along a closed-circuit, figure-eight roadway that is joined to Saginaw Highway by Andre Drive. Twenty-five of the thirty lots have had houses erected on them, with five lots remaining vacant. One of these vacant lots, lot 12, is the focus of the present appeal.

Lot 12 is subject to various restrictive covenants, as are the majority of the lots in the subdivision, the few exceptions being those lots with frontage on Saginaw Highway. In particular, lot 12 may be used only for "residential purposes," and only a single-family dwelling may be constructed on it.

Defendant came into ownership of both lot 12 and a larger piece of property contiguous to Brookshire Estates. At some later point, defendant decided to develop the larger piece of property into a subdivision, and eventually applied for preliminary plat approval of a development it designated Brookshire No. 2 ("Brookshire 2" hereinafter). Brookshire 2 would gain access to the existing roadway of Brookshire Estates by a road constructed over lot 12 of Brookshire Estates. Significantly, the proposed plat for Brookshire 2 included lot 12 of Brookshire Estates.

After hearings were conducted, both Oneida Township and the Eaton County Road Commission granted preliminary approval to the proposed plat. The residents of Brookshire Estates and a related subdivision then filed suit as Brookshire-Big Tree Association, seeking an order vacating the preliminary approval of the plat of Brookshire 2 and an injunction preventing defendant from constructing a road across lot 12. Plaintiff soon moved for summary disposition, contending that the proposed plat of Brookshire 2 was improperly approved because it removed lot 12 from the Brookshire Estates plat and transferred it to the new Brookshire 2 plat. While such a transfer may be effected, plaintiff argued, defendant had followed neither the substantive nor the procedural requirements to effect such a transfer. The circuit court granted plaintiff's motion, and defendant now appeals.

I

The Subdivision Control Act sets forth the proper procedures for replatting a subdivision. The term "replat" is defined to be "the process of changing, or the map or plat which changes, the boundaries of a recorded subdivision plat or part thereof." MCL 560.102(u); MSA 26.430(102)(u) (formerly MCL 560.102[n]; MSA 26.430[102][n]). The parties appear to agree that lot 12 was replatted and dispute only whether the replatting itself was properly effected.

Section 104 of the Subdivision Control Act, MCL 560.104; MSA 26.430(104), provides in relevant part that a

replat of all or any part of a recorded subdivision plat may not be approved or recorded unless proper court action has

been taken to vacate the original plat or the specific part thereof, with the following exceptions:

(a) *When all the owners of lots which are to be part of the replat agree in writing thereto* and record the agreement with the register of deeds, and proof that notice to the abutting property owners has been given by certified mail and the governing body of the municipality in which the land included in the recorded plat is situated, [sic] has adopted a resolution or other legislative enactment vacating all areas dedicated to public use within the proposed replat. [Emphasis added.]

Thus, court action is generally required to effectuate the replat of a subdivision. However, several exceptions to this general rule exist, including one consisting of the written and recorded agreement of "all the owners of lots which are to be part of the replat . . . ."

Defendant contends that because it owns lot 12, it may unilaterally "agree" to the replat of lot 12, meaning that lot 12 may be replatted to become part of Brookshire 2 without the approval of the remaining owners of lots in Brookshire Estates. Because the parties agree concerning the relevant facts, this question is purely one of law that this Court reviews de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

In determining the meaning of a statute, judicial construction is neither necessary nor permitted where the plain and ordinary meaning of the language is clear. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). Here, the statute provides that "all the owners of lots which are to be part of the replat . . . " must agree to the replat. A "replat" is the process of changing the boundaries of a recorded subdivision plat or part thereof. MCL 560.102(u); MSA

26.430(102)(u). Thus, it appears fairly apparent that all the owners of the lots constituting Brookshire Estates must agree to the replat because the boundaries of Brookshire Estates will change if lot 12 is annexed by Brookshire 2—in other words, all lot owners are part of the replat. Therefore, because defendant did not obtain the written agreement of all the lot owners of Brookshire Estates concerning the replat of lot 12, defendant did not satisfy the requirements of MCL 560.104; MSA 26.430(104).

We would add that defendant's position that, as owner of lot 12, it may unilaterally "agree" to the replat of lot 12 would lead to patently absurd results. To allow one lot owner to "agree" to replat his lot would mean that any lot owner unhappy with use restrictions concerning his lot could "agree" to replat his lot, meaning he would not be bound by the use restrictions. All such restrictions would quickly become unenforceable.

II

Defendant also maintains that the trial court erred in refusing to grant defendant permission to build a road across lot 12 to provide access to Brookshire 2. However, this issue is not raised in the statement of questions presented. Review is therefore inappropriate. *Marx v Dep't of Commerce*, 220 Mich App 66, 81; 558 NW2d 460 (1996). Nonetheless, we find no error in the trial court's ruling. Plaintiff presented a reasonable objection to the proposed change, *In re Gondek*, 69 Mich App 73, 77; 244 NW2d 361 (1976), and the fact that other access routes may be more expensive to build does not warrant granting defendant permission to use lot 12 to gain access to Brookshire 2. *R R*

*Improvement Ass'n v Thomas,* 374 Mich 175; 131 NW2d 920 (1965).

Affirmed.

TAYLOR, J. *(concurring).* I concur with the majority's opinion and write to indicate that affirmance of the trial court's order was also appropriate on the basis that the restrictions in the deeds for the lots (including lot 12) were in the nature of negative reciprocal easements. See, e.g., *Webb v Smith (After Remand),* 204 Mich App 564, 572-573; 516 NW2d 124 (1994); *Parcells v Burton,* 20 Mich App 457, 460-461; 174 NW2d 151 (1969).