WILLIAMS v CITY OF TROY

Docket No. 263366. Submitted December 6, 2005, at Detroit. Decided
    December 13, 2005. Approved for publication February 14, 2006,
    at 9:00 a.m.

    Robert J. Williams and others brought an action in the Oakland
        Circuit Court against the city of Troy and Ken Freund. The
        plaintiffs, all landowners within a subdivision, sought declaratory
        and injunctive relief to stop Freund's construction of a condo-
        minium development within the subdivision. The court, Michael
        Warren, J., denied the plaintiffs' summary disposition motion and
        granted the defendants' summary disposition motions, dismissing
        the plaintiffs' claims. The plaintiffs appealed.

        The Court of Appeals *held*:

        1. The trial court properly determined that Freund was not
    required to institute an action under the Land Division Act
    (LDA), MCL 560.101 *et seq.*, to vacate the existing plat before
    seeking the city's approval of his proposed condominium devel-
    opment under the Condominium Act, MCL 559.101 *et seq.* While
    divisions and subdivisions of land are generally controlled by
    the LDA, the Condominium Act specifically provides in MCL
    559.110(1) that the LDA does not control divisions made for a
    condominium project. The administrative rules promulgated
    under the Condominium Act recognize that a proposed condo-
    minium development may overlap a previously platted subdivi-
    sion. Neither the statutes nor the regulations require that the
    plat be vacated under the LDA before a condominium project
    may be developed.

        2. The trial court properly determined that the city approved
    Freund's proposed development under the applicable section of
    the city's zoning ordinances.

        3. The plaintiffs did not establish an issue of material fact
    regarding whether the city violated their rights to substantive
    due process. The applicable zoning ordinance is facially valid,
    and the plaintiffs' challenge to the ordinance "as applied" lacks
    merit.

        Affirmed.

CONDOMINIUMS — DEVELOPMENTS IN SUBDIVISIONS — LAND DIVISION ACT.

> The Condominium Act specifically provides that the Land Division Act does not control divisions made for a condominium project; a proposed condominium development may overlap a previously platted subdivision, and a subdivision plat need not be vacated under the Land Division Act before a condominium project may be developed (MCL 559.110[1], 560.102, 560.104; 1999 AC, R 559.401[4]).

*The Firestone Law Firm, P.C.* (by *Joseph H. Firestone*), for Robert J. Williams and others.

*Lori Grigg Bluhm,* City Attorney, and *Susan M. Lancaster,* Assistant City Attorney, for the city of Troy.

*Jackier Gould, P.C.* (by *Jonathan B. Frank* and *Bradley K. Feldman*), for Ken Freund.

Before: CAVANAGH, P.J., and COOPER and DONOFRIO, JJ.

PER CURIAM. Plaintiffs, landowners in the Middlesex Country Homesites Subdivision, appeal as of right from the trial court's orders denying their motion for summary disposition and granting defendants city of Troy and Ken Freund's motions for summary disposition pursuant to MCR 2.116(C)(8) and MCR 2.116(C)(10). The trial court dismissed plaintiffs' claims seeking to prevent the construction of Mr. Freund's proposed condominium development within the subdivision. We affirm.

### I. FACTUAL BACKGROUND

The original plat for the Middlesex Country Homesites Subdivision was recorded in 1926. At that time, the subdivision was divided into 31 lots. As originally platted, many lots covered over three acres of land. The subdivision was zoned "R-1A One Family Residential," which required that single-family residences be built on

no smaller than half-acre lots.[1] Over time, several of the lots were divided into smaller parcels[2] under the Land Division Act (LDA).[3] As a result, there are currently 63 individual parcels of land within the subdivision.[4] While many of the lots were divided into one- and two-acre parcels, several of the divided parcels are approximately half-acre lots.

Mr. Freund, a developer, purchased three parcels of vacant land in Lots 21 and 22[5] for a proposed "site condominium" development under the Condominium Act.[6] Mr. Freund planned to combine the parcels into a single "condominium project"[7] consisting of six detached "condominium units."[8] The gross density of the proposed development would be 1.48 homes per acre.[9] Access to the development would be provided by a

[1] Troy Zoning Ordinance, § 34.10.01.

[2] The original lot designations were retained following these divisions. The City referred to the separate, divided properties as "parcels" and assigned each a unique tax identification number.

[3] MCL 560.101 et seq. The LDA was formerly known as the Subdivision Control Act and is referenced as such in the City's zoning ordinance.

[4] Homes have not been built on every parcel within the subdivision. However, it does not appear from the record that any regulation or restriction would prevent construction.

[5] Preexisting homes stood on the remainder of Lot 22 and another divided parcel in Lot 21. The remaining land in Lot 21 had previously been dedicated to the City for the creation of a detention pond.

[6] MCL 559.101 et seq. The zoning ordinance also refers to the Condominium Act by the title of its predecessor, the Horizontal Real Property Act.

[7] A "condominium project" is defined as "a plan or project consisting of not less then 2 condominium units established in conformance with this act." MCL 559.104(1).

[8] In a residential site condominium development, a "condominium unit" refers to the residence and land "designed and intended for separate ownership and use . . . ." MCL 559.104(3).

[9] The maximum gross density in the City's R-1A zoning classification is 1.6 dwelling units per acre. Troy Zoning Ordinance, § 34.30.02.

private road intersecting Adams Road, the western boundary of the subdivision. Once constructed, the development would physically resemble a traditional planned subdivision with free-standing residences. However, the homes would be owned as condominiums and the homeowners would share an interest in designated common areas.[10]

Mr. Freund submitted his proposed condominium subdivision plan[11] to the City for review and approval under Troy Zoning Ordinance, § 34.30.06. The City's planning commission conducted a preliminary review and determined that Mr. Freund's proposed development complied with the requirements for the zoning classification.[12] Although one condominium unit included less than a half-acre of land, the commission determined that the average parcel area in the development exceeded the minimum requirement.[13] The commission specifically noted that the members had reviewed the plans for several adjacent subdivisions and considered the rural nature of the area before recommending that the City approve Mr. Freund's proposal. Based on that recommendation, the city council subsequently approved Mr. Freund's proposed development in March of 2003.

Plaintiffs immediately filed suit for declaratory and injunctive relief to prevent the construction of the development.[14] The trial court initially granted partial

---

[10] See OAG, 1989-1990, No 6,577, p 77 (March 13, 1989).

[11] MCL 559.166.

[12] See Troy Zoning Ordinance, § 30.10.01.

[13] Troy Zoning Ordinance, § 34.30.01 ("The average parcel area shall be at least equal to the standard lot size as prescribed by [§ 30.10.01].").

[14] Plaintiffs also recorded a lis pendens against Mr. Freund's property, asserting that it was the subject of ongoing litigation. Mr. Freund filed a separate action against the current plaintiffs alleging slander of title.

summary disposition in defendants' favor. Accordingly, the trial court dismissed plaintiffs' claims that Mr. Freund's proposal to combine parcels from two separate lots in a platted subdivision violated both the LDA and the City's zoning ordinance.[15] The trial court subsequently dismissed plaintiffs' claim that the City violated their right to due process of law through its application of the zoning ordinance to the proposed development.

### II. LAND DIVISION ACT

Plaintiffs first challenge the trial court's determination that Mr. Freund was not required to vacate the subdivision plat under the provisions of the LDA before dividing the land into a condominium development under the Condominium Act. Specifically, plaintiffs contend that Mr. Freund was required to file a court action to vacate the existing plat and submit a "replat," excluding the proposed condominium development.[16]

We review a trial court's determination regarding a motion for summary disposition de novo.[17] A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the pleadings alone and should be granted only if the factual development of the claim

---

That case was assigned to a different judge, but the trial judge in this case dismissed the current plaintiffs' claims before resolving their motion to consolidate. There is no information in the record regarding the final resolution of Mr. Freund's suit.

[15] This Court dismissed plaintiffs' premature appeal from the trial court's order. *Williams v City of Troy,* unpublished order of the Court of Appeals, entered July 1, 2004 (Docket No. 254974). We further note that the trial court failed to address Mr. Freund's separate motion for sanctions pursuant to MCR 2.114. However, Mr. Freund has not raised that issue on appeal.

[16] MCL 560.104.

[17] *Beaudrie v Henderson,* 465 Mich 124, 129; 631 NW2d 308 (2001).

could not justify recovery.[18] A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim.[19] "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in [the] light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists."[20] Summary disposition is appropriate only if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.[21]

The applicability of the LDA to a condominium development within the boundaries of a preexisting subdivision is a question of statutory construction which we review de novo.[22] Divisions[23] and subdivisions[24] of land are generally controlled by the LDA. However, the Condominium Act specifically provides that the LDA "shall not control divisions made for any condominium project."[25] This statutory language is plain and unambiguous and we must enforce the statute as written.[26] Moreover, the administrative rules promulgated pursuant to the Condominium Act specifically recognize that a proposed condominium develop-

[18] *Id.* at 129-130.

[19] *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 397; 605 NW2d 685 (1999).

[20] *Singer v American States Ins*, 245 Mich App 370, 374; 631 NW2d 34 (2001).

[21] *MacDonald v PKT, Inc*, 464 Mich 322, 332; 628 NW2d 33 (2001).

[22] *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

[23] MCL 560.102(d).

[24] MCL 560.102(f).

[25] MCL 559.110(1).

[26] *Krug v Ingham Co Sheriff's Office*, 264 Mich App 475, 481; 691 NW2d 50 (2004).

ment may overlap with a previously platted subdivision.[27] Yet, neither the statutes nor the regulations require that the plat be vacated pursuant to the LDA before a condominium project may be developed.

We further note that, even if the LDA were applicable to the current development, a "replat" would not be necessary under these circumstances. A developer must take court action to vacate a recorded plat when a proposed development would change the boundaries of the plat.[28] Mr. Freund's proposed condominium development clearly falls within the boundaries of the existing subdivision.[29] Accordingly, the trial court properly determined that Mr. Freund was not required to institute an action to vacate the existing plat, pursuant to the LDA, before seeking the City's approval of his proposed development.

### III. ZONING ORDINANCE

Plaintiffs also contend that the City improperly approved Mr. Freund's proposed development under § 34.30.00 of the zoning ordinance. Plaintiffs assert that, as the land was part of a preexisting platted subdivision, Mr. Freund's proposed development was not "unplatted" as envisioned by the ordinance. The interpretation of a municipal ordinance is a question of statutory construction, which we review de novo.[30]

---

[27] See 1999 AC, R 559.401(4)(h) (when a lot within a previously platted subdivision is incorporated into a condominium development, it must be demarcated with "dashed lines and dotted numbers").

[28] MCL 560.102(u); MCL 560.104.

[29] Compare *Brookshire-Big Tree Ass'n v Oneida Twp*, 225 Mich App 196, 199-201; 570 NW2d 294 (1997) (finding a replat necessary where the owner of lots in two separate platted subdivisions sought to combine the lots into one development).

[30] *Soupal v Shady View, Inc*, 469 Mich 458, 462; 672 NW2d 171 (2003).

Section 34.30.00 of the zoning ordinance provides for the creation of site condominium projects within the City as follows:

> It is recognized that Michigan Statutes provide for the implementation of developments consisting of one-family detached residential dwelling units and sites, through procedures other than those enabled by the [LDA]. The intent of this Section is to provide procedures and standards for review and approval or disapproval of such developments, in order to insure that they will be consistent and compatible with other one-family residential developments in the community, and not detrimental to the orderly development of the adjacent area.
>
> For purposes of this Section, "Unplatted One-Family Residential Development" shall include proposed developments consisting of two or more single family detached residential structures on a single parcel, which could not otherwise be implemented through parcel splitting in accordance with Article VI of Chapter 41 of the City Code. Unplatted One-Family Residential Developments would therefore include developments implemented under [the Condominium Act].[31]

Section 34 further provides that any such development must comply with the standards for other developments within the zoning district.[32]

It is clear from the ordinance's definition of "unplatted one-family development" that this section governs the creation, review, and approval of developments established under statutes other than the LDA. The use of the word "unplatted" in the ordinance is imprecise.[33]

---

[31] Troy Zoning Ordinance, § 34.30.00.

[32] See Troy Zoning Ordinance, §§ 34.30.01 and 34.30.03.

[33] The word "unplatted," standing alone, suggests that the ordinance governs proposed developments on land that has not been previously platted. Placed in context, however, the ordinance governs proposed developments not subject to the provisions of the LDA.

Neither the zoning ordinance nor any statute or regulation requires a developer to vacate an existing plat before dividing land in a condominium development. Furthermore, had Mr. Freund proposed to divide this property for the construction of single-family residences under the LDA, plaintiffs would have no grounds to challenge the development. The division and use of the land strictly complies with the City's zoning ordinance. The City is statutorily required to approve a site plan submitted in compliance with its zoning ordinance and other applicable law.[34] The City is further prohibited from treating a proposed condominium project differently than any other form of development allowed by local law.[35] Accordingly, the trial court properly determined that the City approved Mr. Freund's proposed development under this section.

### IV. SUBSTANTIVE DUE PROCESS

Finally, plaintiffs contend that their property interest was diminished without due process of law, as the City approved Mr. Freund's proposed development without evaluating whether it was in harmony with the character of the neighborhood. Plaintiffs challenge the City's approval of a condominium development comprised of half-acre units adjacent to a subdivision with larger lot sizes.

It is well established that zoning ordinances designed to control land use and population density may be implemented for the public's health, safety, and welfare.[36]

---

[34] MCL 125.584d(5).

[35] MCL 559.241(1).

[36] *Paragon Properties Co v City of Novi*, 452 Mich 568, 573; 550 NW2d 772 (1996). See also MCL 125.581; MCL 125.582.

Although the police power allows the government to regulate land use, the Fifth Amendment requires that compensation be paid if a government regulation unreasonably shifts social costs to an individual or individuals. A claim for compensation may allege that an ordinance is confiscatory "as applied" or "on its face." A facial challenge alleges that the mere existence and threatened enforcement of the ordinance materially and adversely affects values and curtails opportunities of all property regulated in the market. An "as applied" challenge alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution.[37]

Plaintiffs conceded below that the City's zoning ordinance was facially valid. The ordinance allows for the development of condominiums as an alternative to standard housing, but mandates that these developments comply with the requirements for the zoning district in which they are constructed. However, plaintiffs' challenge to the ordinance "as applied" lacks merit. Contrary to plaintiffs' assertion, the City did evaluate whether Mr. Freund's proposed development was "consistent and compatible with other one-family residential developments in the *community*, and not detrimental to the orderly development of the adjacent area."[38] The trial court and the City reviewed the documentary evidence provided by the parties regarding the character of the area and the proposed developments. The evidence reveals that lot sizes in adjacent subdivisions are much smaller than those in Middlesex Country Homesites Subdivision and are consistent with Mr. Freund's proposed development. Furthermore, the ordinance does not require that a new development be consistent and compatible with the immediate subdivision. Accordingly, plaintiffs have not created an issue of

---

[37] *Paragon Properties, supra* at 576 (internal citations omitted).

[38] Troy Zoning Ordinance, § 34.30.00 (emphasis added).

material fact that the City violated their right to due process in its application of the ordinance.

Affirmed.