# STATE OF MICHIGAN

# COURT OF APPEALS

GIMMY G. TRESS, ANN M. TRESS, RONALD G. THALHAMMER, Trustee for the RONALD G. THALHAMMER TRUST, CHRISTOPHER J. MICHELS, VERONICA MICHELS, MELITA A. REUBER, Trustee for the MARY A. MEDICO, Sole Benefit Trust, GREGORY D. FLEWELLING, WILLIAM DEVAULT, KATHY DEVAULT, JEANE GILSON, LEONA GILSON, PATRICIA DENNIS, FREDERICK B. COWPER, SUSAN M. COWPER, JAMES R. THOMAS, JIM LUCIUS, Power of Attorney, JAMES GORMAN, THOMAS E. HOFFMEYER, and ETHELYN M. HOFFMEYER,

   Plaintiffs-Appellees,

v

ROSCOMMON COUNTY ROAD COMMISSION, CHARTER COMMUNICATIONS, TOWNSHIP OF LYON, ROSCOMMON COUNTY DRAIN COMMISSIONER, DIRECTOR OF THE DEPARTMENT OF TRANSPORTATION, DIRECTOR OF THE DEPARTMENT OF ENERGY LABOR & ECONOMIC GROWTH/DIRECTOR, FRONTIER COMMUNICATIONS, CONSUMERS ENERGY, DIANE MILLER, ELSBETH CURRY, RICK RUDER and PAULINE C. RUDDER, Trustees for the RICK RUDER and PAULINE C. RUDER TRUST, TRUSTEES OF GAIL A WOLGAST TRUST, ROBERT L. HANSEN, KARRIE R. HANSEN, FRANKLIN J. HUNT, GLORIA A. HUNT, TRUSTEES OF CARMELA CIAVAGLIA TRUST, TRUSTEES OF JOAN L. ENGLISH TRUST, TIMOTHY J. HARRIS, DEBORAH M. HARRIS, STEPHEN J. BALSAM, KATHRYN A. GOFORTH, MICHAEL R. GOFORTH, WILLIAM RAY GOFORTH,

UNPUBLISHED
May 9, 2017

No. 331230
Roscommon Circuit Court
LC No. 14-722037-CH

-1-

JAMES P. VONDALE, CAROL L. VONDALE, CHARLES E. MIRES and LINDA S. MIRES, Trustees of the CHARLES E. MIRES and LINDA S. MIRES TRUST, TRUSTEES OF FRED W. TIEMAN TRUST, TRUSTEES OF JOLENE K. PEACOCK TRUST, MICHAEL C. DELAERE, KEVIN I. DAWLEY, SUSAN DAWLEY, JOSEPH F. MULANEY, LAURA M. MULANEY, DAVID T. DIONESE, JOHN DAVIS, Trustee of the JOHN DAVIS TRUST, DALE D. SCHACHT, KATHLEEN S. SCHACHT, TIMOTHY L. MONET, TRUSTEES OF CLARENCE L. TYLKOWSKI TRUST, JAMES E. FRENCH, CAROL J. MCWETHY, Trustee of the CAROL J. MCWETHY TRUST, DANIEL G. DIONESE, ELLEN A. DIONESE, TRUSTEES OF KATHLEEN M. TROCK TRUST, NORBERT C. ROOBAERT, MARY BETH ROOBAERT, BILL W. BELLAMY, ELIZABETH L. BELLAMY, ARTHUR A. LOEFFLER, CHERYL A. LOEFFLER, JAMES J. KAUFMAN, RENEE L. KAUFMAN, RONALD T. SNOW, SR., FELICIA SNOW, CAMERON ROHDY, HOI ROHDY, MICHAEL THOMAS, SHERRI THOMAS, PATRICIA BLACKBURN, MICHAEL OLKOWSKI, DIANE OLKOWSKI, VALERIE MAE JEWELL, ROBERT M. HRIC, DOLORES L. HRIC, BRIAN RASHOTTE, KRISTINE RASHOTTE, KEITH M. ADDIS, JOHN D. MOORE, RONALD J. BYLICH, DAVID MISPELON, LAURA MISPELON, PAUL MISPELON, JENNIE MISPELON, JOHN L. TAYLOR, SCOT K. WOOD, TAMARA M. WOOD, LINDA K. RAMSEY, STEPHEN KIDD, LYNN KIDD, RICHARD E. RUSSELL and CAROLYN M. RUSSELL TRUST, RICHARD C. OLKOWSKI, COSIMO CUSUMANO, JOSEPHINE CUSUMANO, DOUGLAS W. THORNLEY, AGNES THORNLEY, DONATO SIMONE, CONNIE SIMONE, THERESA PIETRANGELO, JOHN W. THOMAS, NANCY B. ZUZIAK, JAMES A. ZUZIAK, JAMES A. KURISH, APRIL L. KURISH, JOHN L. HARRIS, VICTORIA J. HARRIS, TARAS HELEN RESIDENT AGENT, J & I LASH FAMILY, LLC and ROBERT and DOLORES HRIC TRUST

Defendants,

and

JAMES M. BUTT, and MARY W. BUTT,

Defendants-Appellants.

Before:    SAWYER, P.J., and MURRAY and GLEICHER, JJ.

PER CURIAM.

The question in this case is: what happens when a county or township abandons roads previously dedicated to the public?  Employing only Michigan's Land Division Act, the trial court determined that the abandoned roadway is divided in half and awarded in fee to the landowners abutting the street.  However, our Supreme Court has declared that the Land Division Act may not be used to create substantive property rights in this fashion.  Moreover, the lower court's judgment granted exclusive use of half of each abandoned roadway to its new owner, in contravention of long-established rules regarding the rights of lot owners to use private subdivision roads.  We therefore vacate the trial court's judgment and remand to allow plaintiffs to amend their complaint to seek relief under an alternate legal theory.

## I. BACKGROUND

In 1927, a developer platted and subdivided a large swath of wooded land in Roscommon County and styled it the Hillcrest Subdivision.  The area is near Higgins Lake, but is separated from the water by a road and a compact row of lakeside houses.  By 2014, it became apparent that Hillcrest would never meet the expectations of its designer.  The land remains wooded with only a handful of homes scattered throughout.  As a result of this sylvan state, many of the roadways marked on the plat map and dedicated to the public have never been cleared.  Others are "two-tracks" or paths.

In 1972 and 2013, Roscommon County abandoned portions of various platted roads within Hillcrest, declaring its disinterest in maintaining these passages as public roads.  These abandonments included portions of Summit and Peach Roads.  Ownership of the roads then fell to Lyon Township.  The township followed the county's lead and abandoned the roads as well.

Plaintiffs all own property along Peach Road or at the apex of Summit Road development.  On July 18, 2014, plaintiffs filed suit against the county, township, utility companies, certain state agencies, and every owner of land within 300 feet of the subject roadways.[1]  Plaintiffs sought to amend the plat to vacate "those parts of the following roads, Summit Road between Lots 22 and 34, and Peach Road between 133 and 136 within the Plat of

---

[1] These parties are required defendants pursuant to MCL 560.224a.

Hillcrest" and to vest "fee simple title absolute to the adjacent abutting lot owners, pursuant to" MCL 560.227a of the Land Division Act, MCL 560.101 *et seq*.

MCL 560.221 provides that a circuit court may "vacate, correct, or revise all or part of a recorded plat." To initiate this remedy, a lot owner within a subdivision must file a complaint seeking specific relief. MCL 560.222. MCL 560.226(1)(b) and (c) provide that before a court may consider vacation, correction, or revision of a platted roadway dedicated to a county or township, the governmental unit must first relinquish its rights. MCL 560.227a provides for the transfer of title to a vacated roadway, in relevant part, as follows:

> (1) Title to any part of the plat vacated by the court's judgment, other than a street or alley, shall vest in the rightful proprietor of that part. Title to a street or alley the full width of which is vacated by the court's judgment shall vest in the rightful proprietors of the lots, within the subdivision covered by the plat, abutting the street or alley. . . .

> (2) If the lots abutting the vacated street or alley on both sides belong to the same proprietor, title to the vacated street or alley shall vest in that proprietor. If the lots on opposite sides of the vacated street or alley belong to different proprietors, title up to the center line of the vacated street or alley shall vest in the respective proprietors of the abutting lots on each side. . . .

The Butt family owns four lots—103, 104, 131, and 132—fronting on Summit Road, bordered by Maple Road to the east and Peach Road on the West. Summit Road dead ends at the western border of the Butts' property. For convenience, we include this inset from the plat map:



The Butt family objected to the vacation of Peach and Summit Roads. James Butt attested that he lives on a portion of Summit Road that would be affected by the court's order. He claimed that he uses both Peach and Summit Roads and that "having the use of these roads was a substantial consideration for [his] decision to purchase four lots and to invest in" his property. Mr. Butt further contended that he would "not be able to move the Fifth Wheel out of [his] pole barn without being able to use the full width of Summit Road." Consistent with these objections, the Butt family sought summary dismissal of plaintiffs' complaint pursuant to MCR 2.116(C)(8) and (10). The Butts noted that plaintiffs sought only to vacate those portions of the roadways that service the Butt property and that the vacation of Summit Road "would land lock their pole barn, which faces Summit and houses their 36' foot Fifth Wheel and 32 foot motor home."

Plaintiffs opposed the Butts' summary disposition motion, arguing that the county and township had already abandoned the roads. Plaintiffs further noted that Peach Road was a "paper road" that "has never been cut in at all" and that Summit had not been "built to specifications." Essentially, the case boiled down to a factual dispute regarding whether the Butts had reasonable objections to the vacation of the roadways on the plat. This required a trial, plaintiffs urged.

The circuit court denied summary relief and ordered the matter to proceed to trial. At trial, James and Mary Butt testified, as well as their neighbors on Peach and Summit Roads, Gimmy Tress and Ron Thalhammer. The Butts contended that plaintiffs' entire action was aimed at preventing their use of their 60-foot pole barn and the "toys" stored within. However, Mr. Butt admitted that he received no complaints from neighbors until two years earlier when he began clearing and filling in Peach Road adjacent to his property, an area which at that time was completely wooded. Mr. Butt accused Tress of building a fence down the center line of Summit Road, which the township ordered him to remove. Tress denied that he erected a fence. Rather, he claimed that he installed posts as part of a survey.

Tress indicated that when he purchased his property, the Butts had only a seasonal cottage and Summit Road was narrow and wooded. The Butts had since cleared the road between the Tress and Butt properties to look like a parking lot and cleared the Butt property so it was no longer wooded. Tress wanted to maintain the dead end as it was then, but subsequently described that he desired the property to be maintained "[a]s it was when [he] bought it." Tress intended "to maintain the peace and quiet." He was evasive when asked if he would allow the Butts to continue to use the entire 50-foot width of Summit Road abutting their property to maneuver vehicles into their pole barn.

Thalhammer testified that his property has been in his family since the 1960s. His parents cleared Peach Road only up to their house, not all the way to Summit as platted. The stretch of platted road between Thalhammer's property and Summit Road (where the Butt property is situated) remained completely wooded. Moreover, Thalhammer testified that a steep "severe drop off" in the area prevented the construction of a passable road. Recently, the Butts had "put a pathway to access up in front of [Thalhammer's] house and then continued down Peach Road." This would serve almost like a back road to the Butts' property and cause at least new foot traffic in front of Thalhammer's home.

The circuit court found that since the creation of Hillcrest Subdivision, individual landowners had carved out the roads described on the plat map only as necessary and only for personal ingress and egress. The Butts wanted to expand the use of the roadways beyond this tradition. And the Butts' objections to plaintiffs' request to vacate certain roadways was not reasonable, the court concluded. The trial judge noted that he had personally used large equipment like that kept in the Butts' pole barn. He found Mr. Butt's claimed need of the full 50-foot roadway to pull his vehicles into the pole barn "spurious." Accordingly, the court vacated those portions of Summit and Peach Roads adjacent to the Butts' property. The court awarded fee title interest in the roadway up to the halfway mark to the adjoining landowners. The court ruled that only easements of record would survive.

The Butts now appeal.

## II. ANALYSIS

We "review[] a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003), citing MCR 2.613(C). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Alan Custom Homes*, 256 Mich App at 512.

As noted, MCL 560.227a of the LDA permits "title up to the center line" of a vacated street to vest in the abutting landowners. The purpose of this statute is "to prevent the creation of odd strips of land when alleys [or roadways] are vacated." *Valoppi v Detroit Engineering & Machine Co*, 339 Mich 674, 678; 64 NW2d 884 (1954) (discussing a substantively similar predecessor statute).

When a street is platted, dedicated to the public, and the dedication accepted, " 'a threefold relation to the street' " is sustained by the abutting landowners. *2000 Baum Family Trust v Babel*, 488 Mich 136, 152; 793 NW2d 633 (2010), quoting *Detroit City R Co v Mills*, 85 Mich 634, 653; 48 NW 1007 (1891) (GRANT, J.). The sustained relations are:

"1. As one of the general public.

2. As owner of the reversionary interest to the center of the street.

3. As owner of a lot, possessed of the right of ingress and egress to and from the street." [*Id*.]

The reversionary interest held by abutting landowners helps "prevent the creation of odd strips of land. . . ." *Valoppi*, 339 Mich at 678. Under both the common law and the statutory scheme, it has long been the rule that title to a road abandoned by the public reverts to the abutting landowners. See *2000 Baum Family Trust*, 488 Mich at 155-156.

The right of ingress and egress "is considered a natural easement and one of the incidents of ownership or occupancy of land." *Id*. at 157. Exclusive of the public right to use a road, owners of lots within a platted subdivision have a private right, "an incorporeal hereditament," to use the roads as accessways. *Id*. (quotation marks and citation omitted). "[T]his right of access

-6-

constitutes a property right that adds value to the land." *Id.* As described by this Court in *Minerva Partners, Ltd v First Passage, LLC*, 274 Mich App 207, 219; 731 NW2d 472 (2007):

> The purchaser of property recorded in a plat receives both the interest described in the deed and the rights indicated in the plat. *Kirchen v Remenga*, 291 Mich 94, 102-110; 288 NW 344 (1939); *Fry v Kaiser*, 60 Mich App 574, 577; 232 NW2d 673 (1975). Further, "[a] grantee of property in a platted subdivision acquires a private right entitling him ' "to the use of the streets and ways laid down on the plat . . . .' " *Nelson v Roscommon Co Rd Comm*, 117 Mich App 125, 132; 323 NW2d 621 (1982), quoting *Rindone v Corey Community Church*, 335 Mich 311, 317; 55 NW2d 844 (1952). When a county road commission abandons a public right-of-way, it only relinquishes the public's right to use that road, street, or easement. See MCL 224.18(3). By bestowing the right to use streets in a subdivision on the owners of lots in that subdivision, the plat gives these owners a right to use these streets that is independent of the public's right to use these streets once they are dedicated for public use. Accordingly, if the platted streets in a subdivision are abandoned for public use, the lot owners still retain a separate, private right to use the streets in that subdivision. Essentially, the lot owners retain an independent easement over the streets formerly dedicated for public use, which is unaffected by the road commission's abandonment of these streets.

See also *Rindone*, 117 Mich App at 316-317 (quotation marks and citation omitted) ("These decisions adopt the view that where lands are platted and sales are made with reference to the plat, the acts of the owner in themselves merely create private rights in the grantees entitling the grantees to the use of the streets and ways laid down on the plat or referred to in the conveyance.").

The interplay of the second and third "relations" created confusion in this case. But as held in *Nelson*, 117 Mich App at 133, "Although title to a street which is vacated by court judgment vests in the abutting property owners, MCL 560.227a . . ., the back-lot property owners' right to use the platted street, a right in the nature of an easement, may remain unimpaired." Thus, even if a platted street is vacated by court order, the adjoining landowners, such as Butt, continue to enjoy a right to fully use the vacated road. Moreover, "[t]he rights granted under the dedicatory clauses in the plat to the owners of lots in the subdivision may not be infringed by one lot owner for his own convenience to the detriment of his fellow lot owners." *Minnis v Jyleen*, 333 Mich 447, 454; 53 NW2d 328 (1952).

A lot owner seeking to protect his or her right of use must raise "reasonable objections to vacation." *Vander Meer v Ottawa Co*, 12 Mich App 494, 497; 163 NW2d 227 (1968). This test was culled from the language of an earlier statute that was not included in the LDA. Even so, the test has endured. *In re Gondek*, 69 Mich App 73, 77; 244 NW2d 361 (1976). See also *Brookshire-Big Tree Ass'n v Onieda Twp*, 225 Mich App 196, 201; 570 NW2d 294 (1997).

As described by this Court, "The test of whether an objection to vacation of a portion of a recorded plat is reasonable is not capable of precise answer." *Vander Meer*, 12 Mich App at 497. In *Westveer v Ainsworth*, 279 Mich 580, 584-585; 273 NW 275 (1937), a plat dedicated to

cottage life among undisturbed sand dunes could not be vacated to accommodate a resort. "It is a reasonable objection to vacation of the plat that it is proposed to take from the lot owners the conditions they prize as advantages and for which they have paid . . . ." *Id*. at 585. In this vein, "access to one's property as it existed under a recorded plat at the time of purchase forms the basis of a reasonable objection to impairment of that access by vacation." *Vander Meer*, 12 Mich App at 497. In *In re Upjohn*, 256 Mich 181, 182-183; 239 NW 359 (1931), the Supreme Court found that a lot owner did not raise a reasonable objection to vacating a "driveway," actually a road, where it had never "been opened, is difficult to locate," and was only used as part of a golf course fairway. The mere speculation that roadways that the objector actually used might be closed in the future was insufficient to block the vacation of other unused roadways, the Court determined.

These examples guide our conclusion that the circuit court clearly erred in determining that the Butts failed to raise a reasonable objection to the vacation of Summit Road. The Butts used Summit Road along the entire length of their property. At the east end where Summit intersects with Maple, the Butts erected a garage for their daily-use vehicles. At the far west end of their property, the Butts constructed a large pole barn and depended upon the use of Summit Road to park recreational vehicles inside. The Butts relied upon the plat description of Summit Road and denial of the use of this road will deeply impact their use and enjoyment of their property.

The circuit court did not clearly err, however, in determining that the Butts presented no reasonable objection to the vacation of Peach Road. Mr. Butt claims he depended on his right to build up Peach Road as a second access point to his property for emergency vehicles. Mr. Butt did not deny that the topography of the area included a steep drop off. Yet, he claimed that he intended to fill in the area to make it passable. The circuit court found this plan unlikely and credited competing evidence that the fire marshal rejected Peach Street as a possible route to the Butts' house.

However, the Butts assert that the circuit court could not vacate the roads and grant fee title interest to the abutting landowners in the manner it did. Specifically, they contend that the LDA "lays out a procedure to amend a plat to conform with the facts that exist, but an action brought under this law will not lie unless the Plaintiffs are first able to show a superior claim to the property at issue under some legal theory, such as adverse possession . . . ."

The LDA "provides a process for surveying and marking subdivided property." *Tomecek v Bavas*, 482 Mich 484, 495; 759 NW2d 178 (2008) (opinion by KELLY, J.). "The LDA was never intended to enable a court to establish an otherwise nonexistent property right. Rather, the act allows a court to alter a plat to reflect property rights already in existence." *Id*. at 496. Concerning the interplay between an action brought under the LDA and an action to quiet title, our Supreme Court has said

> an action that seeks to establish a substantive property right arises independently of an LDA action to vacate, correct, or revise a recorded plat. It is only after such a property right has been recognized that the need arises under the LDA to revise a plat that does not reflect the newly recognized property right. Until that property right is legally recognized, the LDA is inapplicable. The language of the

LDA and our cases analyzing the LDA demonstrate that an LDA action is appropriate when a party's interest arises from or is traceable to the plat or the platting process. [*Beach v Township of Lima*, 489 Mich 99, 102; 802 NW2d 1 (2011).]

In *Tomacek*, 482 Mich at 496, the Court held that the plaintiffs did not seek, and the trial court did not effectuate, the creation of substantive property rights through the LDA. Rather, the plaintiffs sought to clarify their right to install a sewer connection along an easement marked on the plat map for ingress and egress to a landlocked parcel. "The trial court merely used the LDA as the tool to validate property rights that already existed." *Id*.

In *Beach*, 489 Mich at 103-104, the plaintiffs sought to declare title to platted streets under the theory of adverse possession. The streets had never been developed and the plaintiffs had farmed the land for approximately 100 years. *Id*. at 104. The Supreme Court held that an equitable quiet title action was the proper method by which to establish the plaintiffs' property rights. *Id*. at 110. Only when those rights were settled could a court correct the plat map. *Id*.

Our conclusion finds support in the plain language of the LDA. The LDA defines a plat as a "map or chart of a subdivision of land." [MCL 560.102(a).] This Court has also described plats as "a description of the physical property interests on a particular area of land." [*Tomacek*, 482 Mich 496 (opinion by KELLY, J.).] When a party files an LDA action to vacate, correct, or revise a recorded plat, MCL 560.223(b) requires the plaintiff to set forth the "reasons for seeking the vacation, correction, or revision of the plat." However, without a judicial decree showing that plaintiffs validly obtained record title to the property, there is no legal or record basis for plaintiffs to seek a vacation, correction, or revision of the plat. Thus, the plat accurately reflected the underlying substantive property rights until the change in ownership rights was established by plaintiffs' adverse possession action. [*Id*. at 111.]

The portion of Summit Road vacated by the trial court had already been graded and filled in by the Butts. Before the county abandoned the road, it also graded and cleared snow from the area. When the county and township abandoned their interests, this portion of Summit became a private road, one still in use by both the Butts and the Tresses. Public abandonment did not create an odd strip of land between the property of two owners over which rights needed to be established as contemplated in *Valoppi*, 339 Mich at 678. And both the Tresses and the Butts retained the right to use this portion of Summit Road for ingress and egress. *2000 Baum Family Trust*, 488 Mich at 152, quoting *Detroit City R Co*, 85 Mich at 653. The trial court could not use the LDA to eliminate the private road, divide the subject land in half, and award each side exclusive use of its portion. This was the creation of substantive property rights, not permitted under the statutes. Because the newly created property rights conflicted with the Butts' right to use the road despite its abandonment, the trial court erred by failing to preserve the easement enjoyed by the Butts, which was created when the roads were platted.

Although use of Peach Road has not been as heavy, plaintiffs still employed an incorrect legal mechanism to establish their rights. Accordingly, we must vacate the trial court's order

awarding fee title interests to the roads in question based only on the LDA.  On remand, the court must modify the order consistent with this opinion.

We vacate the lower court's judgment and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Elizabeth L. Gleicher