DEANE *v.* REX OIL & GAS COMPANY.

1. CONTRACTS—CONSTRUCTION OF TWO INSTRUMENTS AS ONE AGREE-
MENT.

Land purchase agreement signed by plaintiff trustee's bankrupt
and defendant and escrow agreement, not signed by anyone
but the escrow agent, executed at nearly the same time as the
former instrument and in furtherance thereof, were properly
read together.

2. VENDOR AND PURCHASER—OPTIONS.

An agreement for the purchase of land which did not require the
purchaser to purchase it was properly construed an option.

3. SAME—MARKETABLE TITLE—ORDINARY COURSE OF BUSINESS.

A title to real estate is unmarketable if a reasonably careful and
prudent man, familiar with the facts, would refuse to accept
the title in the ordinary course of business.

4. SAME—MARKETABLE TITLE—UNCERTAINTY.

It is not necessary that the title to real estate be actually bad in
order to render it unmarketable, it being sufficient if there is
such a doubt or uncertainty as may reasonably form the basis
of litigation.

5. SAME—MARKETABLE TITLE—FORECLOSURE SALE OF SEVERAL PAR-
CELS FOR ONE LUMP SUM.

Fact that title to several pieces of land was acquired through a
foreclosure sale thereof for one lump sum rendered the title
unmarketable, since a prospective buyer could reasonably re-
quire that the title be on clearer or firmer footing.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 55 Am Jur, Vendor and Purchaser, § 97.
[2] 55 Am Jur, Vendor and Purchaser, § 29.
[2] Instrument for purchase of land as a contract or an option.
    3 ALR 576; 87 ALR 563.
[3] 55 Am Jur, Vendor and Purchaser, § 166.
[3–5, 7] Marketable title.  57 ALR 1253.
[4] 55 Am Jur, Vendor and Purchaser, § 167.
[5] 55 Am Jur, Vendor and Purchaser, § 223.
[7] 55 Am Jur, Vendor and Purchaser, § 214.
[8] 55 Am Jur, Vendor and Purchaser, § 38.
[9] 55 Am Jur, Vendor and Purchaser, § 44.

6. ADVERSE POSSESSION—EVIDENCE OF TITLE—ACTIONS AND SUITS—RECORDING.

To show a record title by adverse possession requires a suit and the recording of a decree.

7. VENDOR AND PURCHASER—MARKETABLE TITLE—ADVERSE POSSESSION—RECORDING.

Where title by adverse possession as to land involved in option agreement was not of record, it was not a marketable title, since there was a substantial defect in the title.

8. SAME—FAILURE TO OBJECT TO TITLE—ACCEPTANCE.

An optionee's failure to object to the title within the period of the option specifically requiring the optionor to provide a merchandisable and acceptable title does not operate as an acceptance of the title especially where the optionor was not obligated to cure the defects.

9. SAME—MERCHANTABLE TITLE—QUIETING TITLE.

Title to land was not merchantable where it was necessary to bring suit to quiet title, hence, optionee was within its rights in rejecting title proffered and demanding return of escrowed deposit of purchase price.

10. SAME—OPTIONS—NOTICE OF DEFECT—TIME—CURING DEFECT.

An optionee was not bound to notify the optionor of a defect in title which could not be corrected within the time limit of the option and which defect the optionor had not agreed to cure.

Appeal from Lake; Neal (Max E.), J. Submitted June 9, 1949. (Docket No. 28, Calendar No. 44,446.) Decided October 10, 1949.

Bill by Frank G. Deane, trustee in bankruptcy for Metzger's, Inc., against Rex Oil & Gas Company, a Michigan corporation, for specific performance of agreement to purchase land. Decree for defendant. Plaintiff appeals. Affirmed.

*McCobb, Heaney & Dunn,* for plaintiff.

*Street & Sorensen,* for defendant.

REID, J. Plaintiff trustee filed the bill in this case to obtain specific performance of an option or agreement for the purchase of land. From a decree dismissing the bill, plaintiff appeals.

Subject to certain claimed defects, plaintiff's bankrupt, Metzger's, Inc., was the record title owner in September and October, 1945, of the 3 parcels of land in Lake county which are the subject of the agreement or option. On September 27, 1945, Metzger's, Inc., entered into a purchase agreement with E. A. Newman, who represented and was acting for defendant Rex Oil & Gas Company (hereinafter referred to as defendant). This agreement is known as exhibit No 1 in the case and is as follows:

"MICHIGAN PROCESSED FOODS, INC.

"OFFICE MEMO

"Date September 27, 1945

"Subject—Purchase agreement
"On this 27th day of September, 1945, we hereby agree to sell, convey and transfer all our right and interest in the following described lands. Situated in Lake county, Michigan,
"The E1/2 of the E1/2 of the SE1/4, section 20, township 19N, range 11W, and the N1/2 of the W5/8 of the NW1/4 of section 28, township 19N, range 11W; and the SW1/4 of section 22, township 19N, range 12W. And containing 250 acres more or less, to E. A. Newman, of Grand Rapids, Michigan, for the sum of $4,100.

"This sum to be paid in the following manner. $400 on the 27th day of September 1945, and the balance of $3,700 to be escrowed in the Commercial State Savings Bank, Greenville, Michigan, on or before October 2, 1945 together with the deeds to the above described lands, and also mortgage discharges for any encumbrance on the above described land.

"The escrow agreement executed by both parties on or before Oct. 2, 1945 shall allow the purchaser 15 days to secure abstracts, tax searches, and approve the title.

"If the title to any property or all are not merchandisable and acceptable to purchaser, the moneys paid in escrow are to be returned to the purchaser.

"Abstract costs and tax history costs are to be paid by purchaser.

"All back taxes to be paid by seller.

"It is hereby understood that purchaser is aware of the royalties now sold on these properties, and of oil and gas leases now covering said lands.

"Witnesseth our hand and seal this 27th day of September, 1945.

"Metzgers Inc.

"Thomas R. Metzger

"E. A. Newman

"Witness—Arthur M. Cook
"Witness—D. O. Anderson"

On September 28, 1945, defendant ordered abstracts of each of the described parcels. The order was in the form of a letter written to the Lake county abstract office, which letter was received on September 29, 1945. Metzger's, Inc., under the terms of the September 27, 1945 purchase agreement, deposited with the bank 3 warranty deeds and defendant deposited with the bank its check for $4,100, the agreed price, the proceeds of which check are held by the bank.

The escrow agreement, exhibit No 2, recites that defendant is purchasing for the sum of $4,100 the lands in Lake county, describing the 3 parcels. The escrow agreement further recites 6 specifications of matters to which the warranty deeds to these lands are subject and recites that defendant is placing with the escrow agent check for $4,100 to be paid to Metzger's, Inc., and further recites that Metzger's, Inc., is placing in escrow a warranty deed for each

of the described parcels of land. The escrow agreement further contains this recital:

"The Rex Oil & Gas Company will be allowed a period from this date to October 20, 1945 at 2 p. m. to secure abstracts and examine title to the above lands. If titles are satisfactory and acceptable to the Rex Oil & Gas Company they are to notify the Commercial State Savings Bank in writing authorizing the payment of the $4,100 to Metzgers' Inc. [Metzger's, Inc.] If the titles are not acceptable the money and deeds are to be returned to each respective party. Upon the payment to Metzgers' Inc. the escrow agent is to forward to the Rex Oil Company or Walter E. Anderson of Muskegon, Michigan, the deeds, mineral deeds and mortgage discharges."

The escrow agreement was signed by the bank as escrow agent but was not signed by either Metzger's, Inc., or the defendant.

The purchase agreement and the escrow agreement (together constituting what is hereinafter referred to as the "agreement") must be read together. The trial court correctly so ruled. The defendant claims that the "agreement" is in effect an option. Defendant was not bound to buy the property and the trial court therefore properly held that the "agreement" was an option. But the defendant had placed its check for the full sum of the purchase price, $4,100, with the escrow agent, and could only repossess itself of its check under and in pursuance of the terms of the "agreement." Hence, we are required to consider the provisions in the "agreement" and especially the portions thereof concerning title.

It is to be especially noted that exhibit No 1, the purchase agreement, contains the words, "If the title to any property or all are not merchandisable and acceptable to purchaser, the moneys paid in escrow are to be returned to the purchaser."

An important question in the case is: Did defendant have substantial reason for withholding approval or acceptance of title? We must bear in mind that the "agreement" in the instant case contemplated not only that the title should be found to be marketable but further contemplated that defendant should find the title acceptable.

"A title may be regarded as unmarketable if a reasonably careful and prudent man, familiar with the facts, would refuse to accept the title in the ordinary course of business. It is not necessary that the title be actually bad in order to render it unmarketable. It is sufficient if there is such a doubt or uncertainty as may reasonably form the basis of litigation." *Bartos* v. *Czerwinski,* 323 Mich 87, 92.

By letter dated November 1, 1945, defendant rejected the titles to said parcels and requested the return of the deposit. The original of said letter was sent to the escrow agent bank and a copy to Metzger's, Inc. Plaintiff claims that Metzger's, Inc., had a marketable title by adverse possession.

The first 2 of the described parcels were occupied as 1 farm. The third parcel has in no respect been occupied and has been "wild" land continuously during the period involved in this litigation. Accordingly there has been no adverse possession of the third parcel.

During the escrow period, under the advice of its attorney, defendant procured some outstanding strains of title in the name of Frank H. Emig and Ethel A. Emig, as husband and wife.

Plaintiff claims that Metzger's, Inc., had merchantable title on September 27, 1945, but that if the title was not merchantable on September 27, 1945, defendant had made it so by fraudulently obtaining an extension of a contract to acquire so-called Buckner and Weiss outstanding interests as

represented by the Emig deeds, and that the obtaining of the deeds to Emig and wife constituted an acceptance of the title by defendant.

There was not adverse possession of the third parcel and even as to the other 2 parcels, the title of Metzger's, Inc., was subject to the objection that the title was acquired through a foreclosure sale of several parcels for one lump sum and though no objection seems to have seasonably been made on that ground to the foreclosure, still a prospective buyer could reasonably require that the title be on clearer or firmer footing. The title of both Weiss and Buckner depended on the regularity of the foreclosure.

Even if we give to the transaction on the part of defendant in the obtaining of the Emig deeds, all the effect contended for by plaintiff, still the title of Metzger's, Inc., was apparently incomplete of record. Adverse possession of parcels 1 and 2 seems to have been conceded, but there has been no adverse possession of the third parcel. In any event, the title by adverse possession as to parcels 1 and 2 was not of record. To show a record title by adverse possession requires a suit and the recording of a decree.

Plaintiff argues that because defendant did not make known its objection to the title within the period of the option, that defendant became bound to purchase. The "agreement" contains no stipulation that the failure of defendant to object to the title within the option period, should operate as an acceptance of the title by defendant, and such failure had no such effect as contended for by plaintiff by inference or otherwise. We reject plaintiff's claim in that particular. Metzger's, Inc., was not obligated to cure any defect pointed out by defendant and it would have been idle for defendant to indicate its objections to the title unless Metzger's, Inc., was

obligated to cure the defect. Defendant was at liberty to reject the contemplated purchase of the property upon discovery of a substantial defect. The defect in question was a substantial defect and reasonably required a proceeding to quiet title.

As far as concerns the title to the premises in question, the case was submitted on agreed statements as to certain matters partially showing how the title stood during the option period and some testimony of matters affecting the title. Among other things, plaintiff argues that a letter by defendant's attorney, Mr. Penny, to defendant, amounts to proof or an admission that when defendant through a third party should obtain deeds of the interests of Weiss and of Buckner, the title of defendant would be complete. A careful perusal of Mr. Penny's letter, however, does not bear out such inference. Mr. Penny's letter says in part, "Your third person would obtain the fee which he would convey to you *on quieting such title*." (Italics supplied.) The necessity of quieting title negatives plaintiff's proposition that upon obtaining deeds from Weiss and the estate of Buckner through Mr. and Mrs. Emig, defendant was possessed of all strains of title needed to complete the title of Metzger's, Inc., in the 3 parcels, at least so far as to meet all reasonable objections. Mr. and Mrs. Emig did not bring suit to quiet title and of course could not have quieted title during the option period.

It appears from all the record that even after defendant, through the Emigs, obtained the interests of Weiss and Buckner, there was still a necessity for bringing proceedings to quiet title, which was a sufficient reason for defendant's rejecting the title and terminating the option agreement. Defendant was justified under all the circumstances of this case in refusing to accept a title that reasonably required a proceeding in court to become a quieted title.

It can be considered that plaintiff concedes there was a "technical defect" in the title of Metzger's, Inc., during the option period, but claims defendant discovered the defect during the contract period and that defendant should have notified Metzger's, Inc., of the defect and given Metzger's, Inc., an opportunity to remedy the defect. The defect in question, as we have seen, was not possible to be remedied during the contract period and defendant was not bound to notify plaintiff to remedy the defect.

The title of Metzger's, Inc., during the escrow period was subject to reasonable objection on the part of defendant and defendant was not bound to accept such title. The plaintiff is not entitled to recover. The decree appealed from dismissed the bill of complaint with full prejudice, which decree is affirmed, with costs to defendant.

SHARPE, C. J., and BUSHNELL, BOYLES, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.