*102 Young, C. J.
This case requires us to consider whether a plaintiff who seeks to establish an adverse possession claim that would affect property in a recorded plat must file a claim under the Land Division Act (LDA), MCL 560.101 et seq., if the plaintiff is not expressly requesting that the plat be vacated, corrected, or revised. We hold that an action that seeks to establish a substantive property right arises independently of an LDA action to vacate, correct, or revise a recorded plat. It is only after such a property right has been recognized that the need arises under the LDA to revise a plat that does not reflect the newly recognized property right. Until that property right is legally recognized, the LDA is inapplicable. The language of the LDA and our cases analyzing the LDA demonstrate that an LDA action is appropriate when a party’s interest arises from or is traceable to the plat or the platting process.
An action to quiet title by adverse possession confers judicial recognition that the possessor acquired marketable title of record to the property at issue. A successful quiet title action also establishes a substantive property right that was not previously shown within the plat. Without possessing record title to the property, no one, including plaintiffs, had a basis on which to request an alteration of the plat under the LDA. Therefore, plaintiffs were not required to proceed under MCL 560.221,[1] which allows a circuit court to vacate, correct, or revise a plat but does not “enable a court to establish an otherwise nonexistent property right.”[2] Accordingly, we affirm the judgment of the Court of Appeals. However, we order the circuit court to strike the portion of its *103 order that corrected the plat to reflect plaintiffs’ successful quiet title action because plaintiffs did not request that relief.
I. FACTS AND PROCEEDINGS
The dispute in this case arises from a disagreement between plaintiff Florence Beach[3] and defendant Lima Township (the township) over property rights to areas of land shown as platted streets on the Harford Village plat. The Harford Village plat, which was made and recorded in 1835, has remained unaltered since its execution. It consists of six blocks arranged in two rows of three. Blocks I, II, and III, which are the relevant blocks here, are bordered to the south by Jackson Road, a county road that runs east to west. Block I is bordered to the west by West Street, a county road that runs north and south. The other relevant streets shown on the plat, North Street, East Street, and Cross Street, have never been developed or used as roads.
Through several conveyances that occurred in 1854, 1881, and 1897, the Beach family acquired the area of land now known as the Beach Family Farm. In particular, the Beach Family Farm consists of all of the lots in Blocks II and III of the plat. In 1954, the township purchased lots in Block I, which is currently the site of a community hall. In 2004, the township purchased several more lots in Block I, intending to build a fire department substation. The township also intended to use and develop part of North Street and part of Cross Street as roads for ingress and egress to the substation.
*104 Plaintiffs disputed the township’s right to use the undeveloped property designated as streets on the plat and filed the instant action to quiet title to the areas platted as North, East, and Cross Streets based on adverse possession. The township filed a counterclaim to quiet title with regard to its right to the platted streets. The parties then filed cross-motions for summary disposition.
The township moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that plaintiffs’ action should be dismissed because they were required to file an action under the LDA to vacate portions of the plat. Plaintiffs contended in their motion for summary disposition, filed under MCR 2.116(C)(8), (9), and (10), that there was no genuine question of material fact that they had acquired title by adverse possession.
The circuit court denied the township’s motion but ordered an evidentiary hearing on plaintiffs’ motion. Following the hearing, the court granted plaintiffs’ motion for summary disposition. The circuit court found that large trees, at least 100 years old, were growing in the middle of the areas platted as streets and that the Beach family had adversely possessed the disputed property by farming, as well as by maintaining private trails and fences on the disputed property. The circuit court held that plaintiffs had established the elements of adverse possession and that plaintiffs were not required to proceed under the LDA. Although plaintiffs had not requested such relief, the court ordered that “[t]o the extent that it is necessary the Harford Plat shall be corrected to remove Cross, North, and East Street[s]....”
On appeal, the Court of Appeals affirmed.[4] In response to the township’s argument that plaintiffs were *105 required to file their claim under the LDA, the Court of Appeals held that “because plaintiffs did not expressly seek in this action ‘to vacate, correct, or revise a dedication in a recorded plat,’ ” an action under the LDA was not required.[5] The Court of Appeals construed our decisions in Martin v Beldean[6] and Tomecek v Bavas[7] as supporting the proposition that “akin to quieting title, resolution of underlying disputes regarding the nature, character, and scope of existing property rights that could potentially lead to plat revisions may be undertaken in the context of an LDA action, but it is not mandatory.”[8] The Court of Appeals also concluded that Martin and Tomecek permit “a bifurcated approach, involving, first, a determination regarding the nature, character, and scope of the existing property interests being disputed by the parties and, second, an alteration of the plat map, if necessary, so that it is consistent with the property interests as determined by the court.”[9] The township subsequently sought leave to appeal, which we granted.[10]
II. STANDARD of review
We review de novo a decision on a motion for summary disposition.[11] We also review de novo questions of *106 statutory interpretation.[12] In addition, whether plaintiffs were required to bring their action under the LDA is a question of law that we review de novo.[13] An action to quiet title is an equitable action that we also review de novo.[14]
III. ANALYSIS
This Court has long recognized the common law doctrine of adverse possession,[15] which the Legislature has since codified.[16] To establish adverse possession, the party claiming it must show “clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right.”[17] After the statutory period ends, the record owner’s title is extinguished[18] and the adverse possessor *107 acquires “legal title” to the property.[19] Acquisition of title in this manner includes “the right to defend the possession and to protect the property against the trespass of all others.”[20] However, the title acquired by adverse possession is neither record title nor marketable title until the adverse possessor files a lawsuit and obtains a judicial decree.[21] Thus, until an adverse possessor obtains the necessary judicial decree, there is no record of the adverse possessor’s ownership interest to verify whether the possessor actually satisfied the elements of adverse possession. The circuit court ruled that the Beach family had established the elements of adverse possession and acquired title to the land before 1907.[22] Consequently, the judicial decree quieting title in plaintiffs settled any ownership claims of the township and conferred marketable title of record to the disputed property on plaintiffs.
The question posed by this case is whether a non-record property holder seeking to establish marketable title by proof of adverse possession must bring such an action under the LDA, rather than solely as an action to quiet title.
*108 The LDA became effective on January 1, 1968. This act and the amendments to it are the most recent manifestations of the Legislature’s regulation of platting.[23] In particular, the LDA provides a process for surveying and marking subdivided property, as well as for recording with the local municipality the information compiled on a plat.[24] The LDA also permits a circuit court to vacate, correct, or revise a recorded plat,[25] which the LDA defines as a “map.”[26] A land plat describes underlying property interests in conformity with record ownership as nearly as practicable.[27]
For the purposes of this case, the most pertinent portion of the LDA, MCL 560.222, provides:
Except as provided in section 222a,[28] to vacate, correct, or revise a recorded plat or any part of a recorded plat, a complaint shall be filed in the circuit court by the owner of a lot in the subdivision, a person of record claiming under the owner, or the governing body of the municipality in which the subdivision covered by the plat is located.
*109 In addition, MCL 560.223 requires that the complaint set forth “[t]he part or parts, if any, sought to be vacated and any other correction or revision of the plat sought by the plaintiff” and “[t]he plaintiff’s reasons for seeking the vacation, correction, or revision.” MCL 560.224a sets forth the parties that must be joined in actions under the LDA.[29] And MCL 560.229 requires a plaintiff to record the judgment after the entry of an order for vacation, correction, or revision of a plat.[30]
The creation, termination, and vacation of plats are controlled by the statutory authority of the LDA. Consequently, “the exclusive means available when seeking to vacate, correct, or revise a dedication in a recorded plat is a lawsuit filed pursuant to MCL 560.221 through 560.229.”[31] Requiring a lawsuit that seeks to alter any part of a plat to be filed under the LDA ensures that the plats on file remain accurate.[32] However, “[t]he LDA was never intended to enable a court to establish an otherwise nonexistent property *110 right. Rather, the act allows a court to alter a plat to reflect property rights already in existence.”[33]
We conclude that plaintiffs, who filed an action to quiet title based on adverse possession, were not required to proceed with an action under the LDA. Plaintiffs’ quiet title action was the appropriate action to establish their entitlement to hold record title to the property at issue. Because plaintiffs’ quiet title action established a substantive property right that was not reflected in the plat or traceable to the platting process, their action involved more than merely correcting the plat to reflect a preexisting interest in land. Plaintiffs’ claim to the property developed more than a century ago; however, public recognition of that right depended on plaintiffs’ ability to prove the elements of adverse possession in a present-day quiet title action.
The township’s challenge to plaintiffs’ claim required the circuit court to resolve the merits of plaintiffs’ adverse possession claim before considering any claims regarding the plat’s accuracy. If plaintiffs had failed to prove adverse possession by clear and cogent evidence, the township’s interest in the land would have been paramount and the plat would have remained accurate. Revising a plat ensures that the plat accurately reflects existing substantive property rights; a revision does not, however, establish rights that did not exist previously.[34] Rather, when a claimant challenges title to land through adverse possession, substantive property rights are established through a quiet title action.[35] Therefore, plaintiffs could not have *111 obtained the relief they sought by merely filing a claim under the LDA.[36]
Our conclusion finds support in the plain language of the LDA. The LDA defines a plat as a “map or chart of a subdivision of land.”[37] This Court has also described plats as “a description of the physical property interests on a particular area of land.”[38] When a party files an LDA action to vacate, correct, or revise a recorded plat, MCL 560.223(b) requires the plaintiff to set forth the “reasons for seeking the vacation, correction, or revision of the plat.” However, without a judicial decree showing that plaintiffs validly obtained record title to the property, there is no legal or record basis for plaintiffs to seek a vacation, correction, or revision of the plat. Thus, the plat accurately reflected the underlying substantive property rights until the change in ownership rights was established by plaintiffs’ adverse possession action.[39]
*112 Our conclusion is also supported by this Court’s caselaw addressing the LDA. We previously discussed the scope of LDA actions in Martin v Beldean and Tomecek v Bavas. In Martin, the plaintiffs were landowners in a recorded plat consisting of 21 lots and three outlots who filed a quiet title action to have a provision of the plat language regarding an outlot declared “null and void.”[40] The plaintiffs owned a lot in the plat that bordered the outlot in question and also had an ownership interest in the outlot itself. The plaintiffs argued that the restriction regarding use of the outlot had expired and claimed that they were entitled to have the plat language removed. The Court of Appeals agreed.[41]
We reversed and held that the plaintiffs’ efforts to have a plat dedication of an outlot declared “null and void” required the filing of an LDA action.[42] This was because the Martin plaintiffs’ requested order sought relief that only the LDA could afford.[43] The plaintiffs had improperly filed a quiet title action because the removal of plat language constituted an action to vacate, correct, or revise the plat and a lawsuit under the LDA is “the exclusive means available” for a party to vacate, correct, or revise a recorded plat.[44]
The dissent incorrectly concludes that Martin requires plaintiffs in the instant case to file under the *113 LDA. Martin presents the very opposite situation from the one this case presents. Unlike plaintiffs here, the Martin plaintiffs had a preexisting substantive property right — reflected in the plat and documented by a deed — in the plat whose language they sought to have declared void. Thus, the issue in Martin concerned whether the plat’s language accurately reflected the parties’ preexisting rights as outlined in the plat itself. Furthermore, the relief sought by the Martin plaintiffs’ quiet title action was to conform the plat at issue to those preexisting property rights. In this case, plaintiffs had no recognized, recorded, preexisting property rights in the disputed land. Plaintiffs’ sole claim to the land required establishing legally cognizable substantive property rights that were not recognized within the plat, which plaintiffs could only accomplish by proving, for the first time in more than 100 years, that they and their predecessors in interest had satisfied the elements of adverse possession. Finally, unlike the action in Martin, plaintiffs’ successful quiet title action leaves the plat unchanged, but inaccurate. However, because plaintiffs have now successfully established their rights to the property, they have a basis on which to request that the plat be corrected.[45]
*114 In Tomecek, we considered a dispute over the meaning of a restrictive covenant running with a plat, which prevented the plaintiffs from erecting a building on their lot until that lot had access to a municipal sanitary sewer line.[46] Because the lot at issue was landlocked, the plaintiffs had an easement over two other lots through which they accessed their property, but upon which no utilities were located. The plaintiffs argued that they were entitled to use their easement to access the municipal sewer line.[47] A second easement existed on the plat where plaintiffs’ lot was located, and both easements were labeled “drive easement” on the plat. At the time of platting, the second easement was used as a right of way and had utilities located on it as well. Four justices concluded that the original grantor intended both easements to be used for right-of-way access and for utility access.[48] Thus, the plaintiffs were permitted to access utilities through their easement.
Tomecek also addressed whether the LDA permitted a court to affect underlying substantive properly rights by vacating, correcting, or revising a recorded plat. Five justices concluded that “[t]he LDA cannot be used to create substantive property rights”[49] and set forth the following principles regarding the parameters of an action under the LDA:
*115 The LDA defines a plat as a map. A plat is a description of the physical property interests on a particular area of land. A map, by itself, is not a determination of substantive property interests. If one “revises” a map of the United States to show Michigan encompassing half of the country, it does not make it so. The LDA was never intended to enable a court to establish an otherwise nonexistent property right. Rather, the act allows a court to alter a plat to reflect property rights already in existence [50]
Thus, the LDA cannot establish substantive property rights by redrawing the lines in a plat because the plat, as a map, merely reflects preexisting substantive property rights.
The lead opinion in Tomecek also concluded that, when the trial court altered the plat at issue, the plaintiffs’ LDA action did not “create” a property right:
In this case, the LDA did not create new substantive property rights when the circuit court altered the plat to reflect that the central easement encompasses utility access. This right existed with respect to the central easement since its inception, when the original grantors recorded the central easement intending it to include utilities. The trial court merely used the LDA as the tool to validate property rights that already existed.[51]
Because the right to use the easement in question for utility access existed at the time of platting, the LDA did not create a property right. Thus, the issue in Tomecek concerned the scope of the easement rights that existed *116 in the plat. By contrast, in this case, plaintiffs’ legal entitlement to the property existed independently of the plat.
Contrary to the dissent’s arguments, our analysis does not draw “hypertechnical distinctions” between this case and our precedents analyzing the LDA.[52] Rather, our analysis simply recognizes the limitations of the LDA and the common thread that runs through Hall, Martin, and Tomecek [53] In those cases, the disputes centered on whether a plat accurately reflected existing substantive property rights as determined by the relevant plat language. In this case, the dispute concerns the establishment of a substantive right neither reflected in the plat nor traceable to the platting process. The LDA’s language, coupled with the applications of the LDA set forth earlier, highlights the crucial limitation of LDA actions to vacate, correct, or revise a *117 recorded plat. If a party’s interest in land is traceable to the plat or the platting process, the LDA is the appropriate avenue for relief. If, as here, a party seeks to establish a substantive interest in land that is not traceable to the plat nor the platting process, the LDA cannot provide the necessary relief.
Additionally, plaintiffs’ quiet title action did not seek to have the plat language regarding North, East, and Cross Streets declared “null and void,” nor does it “vacate, correct, or revise” the plat. Rather, plaintiffs’ quiet title action served a very different purpose from the purpose served by an LDA action.[54] Unlike the factual situations in Hall, Martin, and Tomecek, plaintiffs’ interest in the disputed property did not depend on the plat, the plat’s dedication language, or whether the township abandoned the streets.[55] Plaintiffs ac *118 quired their interest in the land by adverse possession, the very nature of which requires acting in a manner contrary to another person’s interests, including interests that are reflected in a plat. Plaintiffs’ quiet title action required plaintiffs to affirmatively establish their entitlement to the disputed land and, thus, merely revising the plat could not provide plaintiffs the necessary relief.
We agree with the township that the Legislature has expressed an intent that a plat may only be properly altered, in whole or in part, by following the procedures set forth in the LDA. We are not persuaded, however, by the township’s argument that because the consequence of plaintiffs’ successful quiet title action altered substantive rights created by the dedication of land in a recorded plat, they were required to bring their action under the LDA in the first instance. This position is inconsistent with the holding in Tomecek.[56] If the rights indicated in the plat were superior to the underlying substantive property rights indicated in the register of deeds, the township would be correct. However, we see nothing to suggest that the LDA elevates the plat description above the underlying substantive property rights contained therein. Thus, the LDA does not require a party to proceed under its procedures unless *119 that party is seeking to alter the plat or the dedication language of the plat to which the party has a preexisting substantive property right as the owner of the property or a person of record claiming under the owner.[57]
Furthermore, we reject the claim that plaintiffs’ action to quiet title by adverse possession is merely a disguised action to alter a plat and the assertion that our decision encourages artful pleading or gamesmanship. Plaintiffs in this case merely pleaded what they sought to accomplish, which was to establish a substantive interest in property on the basis of adverse possession. Although we see no reason why plaintiffs could not have addressed both the adverse possession claim and the LDA claim in bifurcated proceedings — in which the court would have first addressed the quiet title claim and then, if necessary, resolved any issues regarding the plat — there is nothing in the LDA that requires a *120 litigant to proceed in that manner. The action to quiet title was a necessary prerequisite, permitting plaintiffs to obtain the marketable title of record that is essential to supporting a subsequent claim for altering the plat under the LDA.[58] Thus, a meaningful and necessary distinction exists between establishing marketable title of record by adverse possession and having that property interest accurately reflected in the plat.[59]
Finally, we hold that the circuit court erred when it ordered the unrequested relief that, “[t]o the extent that it is necessary[,] the Harford Plat shall be corrected to remove Cross, North, and East Street and vest[] title in favor of the plaintiffs.” Because the LDA provides the exclusive means to vacate, correct, or revise a plat,[60] and plaintiffs did not proceed under the LDA, the circuit court lacked the authority to order a correction of the plat. Although plaintiffs now have a basis on which to seek a revision of the plat, the circuit court was without jurisdiction to order the correction of the plat at the time plaintiffs sought to quiet title to the property. Therefore, we order the circuit court to strike that portion of its order. [61]
*121 IV. CONCLUSION
We conclude that plaintiffs were not required to file their action under the LDA. Although plaintiffs could have filed an action under the LDA contingent on establishing their substantive right in a quiet title action, they were not required to do so because they did not expressly request the alteration of the plat and because plaintiffs’ quiet title action established a substantive property right for the first time. Accordingly, we affirm the judgment of the Court of Appeals that plaintiffs were not required to bring their action under the LDA on the basis of the preceding analysis and remand the matter for the circuit court to strike the erroneous portion of its order instructing that the plat be revised.
Marilyn Kelly, Hathaway, Mary Beth Kelly, and Zahra, JJ., concurred with Young, C.J.

 MCL 560.221 provides that “[t]he circuit court may, as provided in sections 222 to 229 vacate, correct, or revise all or a part of a recorded plat.”

 Tomecek v Bavas, 482 Mich 484, 496; 759 NW2d 178 (2008).

 After Ms. Beach filed this action, the circuit court ordered the remaining plaintiffs joined as necessary parties because they each had an interest in the Beach Family Farm, which plaintiffs assert includes the disputed platted streets. For ease of reference, we will generally refer to plaintiffs collectively.

 Beach v Lima Twp, 283 Mich App 504; 770 NW2d 386 (2009).

 Id. at 509.

 Martin v Beldean, 469 Mich 541; 677 NW2d 312 (2004).

 Tomecek, 482 Mich 484.

 Beach, 283 Mich App at 518.

 Id. at 520 (emphasis omitted).

 The order granting leave to appeal directed the parties to brief only “whether a plaintiff who seeks to establish an adverse possession claim that would affect property in a recorded plat must file a claim under the Land Division Act, MCL 560.101 et seq., if the plaintiff is not expressly requesting that the plat be vacated, corrected or revised.” Beach v Lima Twp, 485 Mich 1036 (2010).

 Woodman v Kera LLC, 486 Mich 228, 236; 785 NW2d 1 (2010).

 Dep’t of Transp v Tomkins, 481 Mich 184, 190; 749 NW2d 716 (2008).

 Martin, 469 Mich at 546.

 Walker v Bowen, 333 Mich 13, 20; 52 NW2d 574 (1952).

 See Sanscrainte v Torongo, 87 Mich 69; 49 NW 497 (1891).

 See MCL 600.5801, which provides in part:
No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.
(4) In all other cases under this section, the period of limitation is 15 years.

 Burns v Foster, 348 Mich 8, 14; 81 NW2d 386 (1957) (“It is elementary that the burden of proving adverse possession rests upon the party who alleges it.. . .”); MCL 600.5801.

 “Michigan courts have followed the general rule that the expiration of the period of limitation terminates the title of those who slept on their rights and vests title in the party claiming adverse possession.” Gorte v *107 Dep’t of Transp, 202 Mich App 161, 168-169; 507 NW2d 797 (1993), citing Gardner v Gardner, 257 Mich 172, 176; 241 NW 179 (1932).

 Miller v Miller, 100 Mich 563, 564; 59 NW 242 (1894).

 Zabowski v Loerch, 255 Mich 125, 128; 237 NW 386 (1931) (citation and quotation marks omitted).

 See Escher v Bender, 338 Mich 1, 7-8; 61 NW2d 143 (1953) (“Title established through adverse possession is free from encumbrance and of a character to assure quiet and peaceful enjoyment.. ., but it is not a marketable title of record until there has been a judicial determination of such title.”); Deane v Rex Oil & Gas Co, 325 Mich 625, 631; 39 NW2d 204 (1949) (“To show a record title by adverse possession requires a suit and the recording of a decree.”).

 Beginning in 1907, Michigan law precluded obtaining title to publicly owned property through adverse possession. See 1907 PA 46; Arduino v Detroit, 249 Mich 382, 387; 228 NW 694 (1930).

 As we noted in Martin, 469 Mich at 543:
In the earliest days of this state, indeed, even before statehood, in order to allow townships to be subdivided into discrete areas containing, for example, residential lots, dedicated streets, alleys, parks, etc., plat legislation was enacted. After Michigan became a state in 1837 there were numerous statutes amending and revising the requirements for recording and changing plats over the years. Further, in 1873 Michigan began centrally maintaining a file of all plats with the State Treasurer so that interested individuals could inspect them and ascertain the rights and limitations of a given plat.

 Tomecek, 482 Mich at 495 (opinion by Kelly, J.).

 Id.; MCL 560.221.

 MCL 560.102(a) (“ ‘Plat’ means a map or chart of a subdivision of land.”).

 See MCL 560.206(1).

 MCL 560.222a refers to public utility easements and is not relevant to this case.

 These parties include the owners of record title of each lot or parcel of land within 300 feet of the lands described for vacation or revision; the municipality where the plat is located; the director of the Department of Energy, Labor, and Economic Growth (now the Department of Licensing and Regulatory Affairs); the drain commissioner; the chairperson of the board of county road commissioners; public utilities with installations or equipment in the plat; and the directors of the state transportation department and the Department of Natural Resources if the plat includes a state highway. MCL 560.224a.

 MCL 560.229 provides:
Within 30 days after entry of judgment, for vacation, correction, or revision of a plat, plaintiff shall record the judgment in the office of the register of deeds. The register of deeds shall place on the original plat the date, liber, and page of the record of the court’s judgment.

 Martin, 469 Mich at 542-543.

 Id. at 551 n 24.

 Tomecek, 482 Mich at 496 (opinion by Kelly, J.).

 See id.

 See MCL 600.2932.

 As early as 1937, this Court acknowledged the distinction between obtaining title by adverse possession and vacating a plat. See Olsen v Grand Beach, 282 Mich 364, 368-369; 276 NW 481 (1937).

 MCL 560.102(a).

 Tomecek, 482 Mich at 496 (opinion by Kelly, J.) (emphasis added).

 As additional support for this analysis, we note that the LDA affords standing to file a complaint “to vacate, correct, or revise a recorded plat or any part of a recorded plat” only to “the owner of a lot in the subdivision, a person of record claiming under the owner, or the governing body of the municipality in which the subdivision covered by the plat is located.” MCL 560.222. If we were to hold, as the dissent argues, that an adverse possessor is required to file under the LDA, the adverse possessor may not have standing to pursue the very LDA action that the dissent would require. If a party acquired land in a plat by adverse possession hut did not become an “owner of a lot in the subdivision,” the party could not file an LDA action under MCL 560.222. Therefore, if, as the dissent argues, an LDA action were a prerequisite to establishing an adverse possession claim, a person who was not already a lot owner would he left without recourse to acquire record title by adverse possession. Such a holding would work a fundamental change in property law by *112 effectively precluding an entire class of litigants from establishing record and marketable title through adverse possession. Nothing in the LDA indicates that the Legislature intended this result.

 Martin, 469 Mich at 544-545.

 Martin v Redmond, 248 Mich App 59; 638 NW2d 142 (2001).

 Martin, 469 Mich at 550.

 The Martin plaintiffs expressly requested that the court “ ‘remov[e] the. .. restrictions/reservations from the subject portion of Outlot A owned by the Plaintiffs and/or declaring same null and void.’ ” Id. at 545 n 10.

 Id. at 542-543.

 Our decision is also consistent with Hall v Hanson, 255 Mich App 271; 664 NW2d 796 (2003), which we cited with approval in Martin. Martin, 469 Mich at 550 n 21. In Hall, the defendants filed a counterclaim to quiet title, alleging that the relevant plats “were clouds on their title.” Hall, 255 Mich App at 277. The Hall defendants challenged the validity of a street dedicated in a plat and claimed that the plaintiffs had failed to accept the dedication or, in the alternative, abandoned the street. The defendants in Hall did not claim an interest in the street hy virtue of adverse possession or on any other basis independent of the plat. Rather, the defendants’ claimed interest in the street at issue was directly traceable to and arose from the plat and the platting process. If the street were vacated — that is, if a court determined that the plaintiffs had failed to accept the dedication or abandoned the street — the defendants would, hy operation of law, own the vacated portions of the street because, as *114 reflected in the plat, they were abutting landowners. See MCL 560.227a. Unlike plaintiffs here, the Hall defendants claimed a property interest that arose from the plat. Thus, the defendants’ interest in the relevant property emanated from the plat and the platting process, and the defendants were required to proceed under the LDA because their claim addressed the scope of property interests as reflected in the plat. The Hall defendants, in short, were not establishing a substantive right that was not depicted in the plat, whereas, in this case, plaintiffs’ claim did establish a substantive right that was established without regard to the plat.

 Tomecek, 482 Mich at 487-489 (opinion by Kelly, J.).

 Id. at 487-488.

 Id. at 487; id. at 499 (opinion by Cavanagh, J.).

 Id. at 497 (opinion by Kelly, J.); id. at 505 (opinion by Young, J.).

 Id. at 496 (opinion by Kelly, J.) (emphasis added); accord id. at 505 (opinion by YOUNG, J.). It is not clear how the dissent reconciles its position with Tomecek, which compels the conclusion that plaintiffs’ quiet title action was appropriate. In this case, without first quieting title, plaintiffs’ LDA action would have involved the establishment of a substantive right, which, as five justices held in Tomecek, is relief that the LDA cannot provide.

 Id. at 496 (opinion by Kelly, J.) (emphasis added).

 Post at 148.

 Contrary to the dissent’s assertions, our decision does not suggest that Martin was decided incorrectly. As stated throughout this opinion, the factual and legal differences that distinguish the instant matter from Martin compel the result of this case. Moreover, the dissent’s repeated efforts to transform plaintiffs’ quiet title claim into an LDA action to revise a plat erroneously conflates two distinct legal actions. Yet, notwithstanding the attempt to mesh these different claims such that we should require plaintiffs to proceed under the LDA, the dissent agrees that plaintiffs could not file an LDA action without first establishing a substantive interest in the land: “If the plat had been simply altered without a judicial decree that plaintiffs were the true owners of the property, the LDA would have served as the vehicle to ‘establish an otherwise nonexistent property right,’ which would be contrary to our holding in Tomecek .. . .” Post at 145-146.
The quiet title action at issue serves precisely that (limited) purpose: to obtain the necessary judicial decree. Unless and until plaintiffs affirmatively demonstrate their superior interest in the land, the LDA is inapplicable. The dissent errs by treating plaintiffs’ lawsuit, which did not seek and could not have obtained a plat revision without first succeeding in this claim, as an action that must he filed under the LDA.

 The dissent argues that plaintiffs’ quiet title action “for all practical purposes sought to vacate or otherwise alter the plat. . . .” Post at 140. However, in actuality, plaintiffs’ quiet title action served the entirely separate purposes of establishing a cognizable substantive property right in land and obtaining record ownership of the property. The inescapable conclusion of plaintiffs’ action — and the gravamen of plaintiffs’ claim — is that plaintiffs sought to establish an otherwise unrecognized substantive interest in land. As this Court recognized in Tomecek, the LDA is incapable of providing the relief plaintiffs requested. Moreover, as outlined earlier and conceded by the dissent, plaintiffs’ action was a necessary prerequisite to an LDA action. We agree with the dissent that the essential issue is “whether plaintiffs’ quiet-title action seeks to ‘vacate, correct, or revise a recorded plat or any part of a recorded plat.’ ” Post at 154. However, because we believe that plaintiffs’ quiet title action did not seek such relief — either in form or in substance — we do not require plaintiffs to proceed under the LDA.

 The dedication provision of MCL 560.253(1) does not change our analysis. The plain language of § 253 addresses itself to the conveyance of substantive property rights by a landowner when the plat is initially created and how those rights are reflected in a plat. When a landowner certifies, signs, acknowledges, and records a plat pursuant to the LDA, that process is “deemed” sufficient to convey property interests to the *118 donees represented in the plat. The LDA indicates that the only time at which a plat establishes substantive rights is when a plat is created in conformity with the LDA’s requirements. Thus, although a property owner may convey substantive rights by creating a plat because the LDA “deemfs]” it so, the plat that results from this process merely reflects those conveyed rights because a plat, as defined by the LDA, is a “map or chart of a subdivision of land.” MCL 560.102(a). Section 253 does not undermine our conclusion that plaintiffs’ quiet title action was appropriate because plaintiffs established a substantive interest in the disputed property that was neither represented in the plat nor traceable to the platting process.

 Tomecek, 482 Mich at 496 (opinion by Kelly, J.).

 The dissent’s effort to harmonize the quiet title statute with the LDA highlights the basic disagreement between the two opinions. The dissent argues that plaintiffs’ quiet title action overlaps with and must yield to the LDA and accuses the majority of “viewfing] it as of little moment whether a plaintiff avails himself of the quiet-title statute or the LDA[.]” Post at 142. On the contrary, we find the distinction of considerable moment, and our analysis recognizes the separate purposes served by quiet title actions and actions under the LDA, as well as the limitations of each. Quiet title actions enable a party to establish a substantive right. LDA actions, on the other hand, are concerned with whether a map accurately reflects the substantive rights described therein and do not authorize a court to establish an otherwise nonexistent right. Tomecek, 482 Mich at 496 (opinion by Kelly, J.). Had plaintiffs merely filed an LDA action grounded on the bare assertion that the plat was inaccurate because of an unproven claim of adverse possession, plaintiffs would not have been entitled to relief because the LDA could not have provided the requested substantive relief. Thus, the distinction between the two claims is of substantial importance, and it is unnecessary for quiet title actions to yield to the LDA when the LDA plainly cannot provide the same relief. Therefore, because each claim serves a separate purpose — as demonstrated previously — -there is no tension between the statutes and no need to harmonize them.

 That a quiet title action to establish title to land is a “necessary prerequisite to the alteration of [a] plat” is a proposition with which the dissent agrees. Post at 145. The dissent errs by conflating the plat alteration with the action to quiet title despite recognizing that a party must establish title — accomplished here through a quiet title action— before any alteration to a plat becomes necessary.

 See Olsen, 282 Mich at 368-369 (recognizing the distinction between claiming title by adverse possession and vacating a plat); Howard v Berrien Springs, 311 Mich 567, 568, 570; 19 NW2d 101 (1945) (recognizing the plaintiffs right to quiet title based on adverse possession “as to any claim of defendant village in the premises,” which included land in a recorded plat dedicated “ ‘to remain open and free for the benefit of the public’ ”).

 Martin, 469 Mich at 542-543.

 We recognize that the practical effect of our analysis is to render the plat inaccurate. But the township is not without recourse to correct the *121 plat because it has standing under the LDA, as the municipality in which the subdivision covered by the plat is located, to seek to correct the plat. MCL 560.222. Although the township is not required to file such an action, it may certainly do so if it desires to rectify the inaccuracy of the plat by having it altered to indicate that plaintiffs have record title to the disputed property. Plaintiffs, as lot owners, may do the same. Id.