# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID CAMPBELL, LYNNE CAMPBELL,
RICHARD J. MANZARDO, and PAULA K.
MANZARDO,

        Plaintiffs-Appellants,

v

FENTON TOWNSHIP, DEPARTMENT OF
ENERGY, LABOR, AND ECONOMIC
GROWTH, GENESEE COUNTY ROAD
COMMISSION, DEPARTMENT OF
TREASURY, WILLIAM A. RICHARDSON, II,
DAVID G. POLIDAN, GAYLE POLIDAN,
KATHERINE M. VISSER, JERI A.
HACKENBERRY, RONALD BIRCHMEIER,
PHILIP LEWIS, OLIVIA PIERCE, and the
CAROLE-ARTHUR WYMAN REVOCABLE
TRUST,

        Defendant-Appellees,

and

GENESEE COUNTY DRAIN COMMISSION,
JSJJ, L.L.C., BAC HOME LOANS SERVICING,
ROBERT J. SWATOSH, MICHELLE
SWATOSH, AMY SOWERS, VICTOR
SHEPHERD, DAVID OVERWAY, JR.,
MICHELLE OVERWAY, DONALD
KIRKWOOD, ROGER STUDLEY, KATIE
LEONI, JANICE MACKSOOD LIVING TRUST,
SHARON DAVIS TRUST, CRAIG ANDERSON,
THOMAS MACKSOOD, ARICK GOETZ,
CRAIG ANDERSON, DAVID W. POLIDAN, and
ALPHONSE SCHMIDT,

        Defendants.

UNPUBLISHED
January 15, 2015

No. 318606
Genesee Circuit Court
LC No. 11-095255-CH

-1-

Before: FORT HOOD, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Plaintiffs, David Campbell, Lynne Campbell, Richard J. Manzardo, and Paula K. Manzardo, appeal as of right an opinion and order denying their request to vacate a park located between plaintiffs' properties. On appeal, plaintiffs argue that the trial court erred in denying their action to vacate or modify the park and that the trial court erred when it determined the allowable uses of the park included snowmobiling. We affirm.

This dispute centers around a 20-foot strip of land, referred to as a "park," located between David and Lynn Campbell's real property and Richard and Paula Manzardo's real property in Fenton Township, Michigan. The Campbell's own lot 66 in the Shore Acres Homesites subdivision, and the Monzardos own lots 64 and 65. Between lots 65 and 66 is the park, which was dedicated for the use of all present or future owners of land in Shore Acres Homesites. All three lots are located on Lake Fenton. Thus, the park was intended to provide land owners in Shore Acres Homesites access to the lake. Plaintiffs filed a complaint to vacate the park based on water issues and flooding, as well as misuse of the park. Alternatively, plaintiffs asked the trial court to define the scope of park use and, in particular, find that subdivision residents could not use snowmobiles in the park. After a bench trial, the trial court denied plaintiffs' request to vacate the park. The court further ordered that pedestrian and snowmobile traffic would be permissible in the park, and granted specific relief designed to remedy plaintiffs' concerns about the park. Plaintiffs appeal.

Plaintiffs first argue that the trial court erred in refusing to vacate the park located between their properties. We disagree based on defendants' correct assertion that plaintiffs did not have a legal or record basis to request that the trial court vacate the park pursuant to *Beach v Twp of Lima*, 489 Mich 99, 105-106; 802 NW2d 1 (2011).

We review a trial court's findings of fact in a bench trial for clear error and review de novo its conclusions of law. *Chelsea Investment Group LLC v City of Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id.* at 251.

Plaintiffs filed a complaint to vacate the disputed portion of the Shore Acres Homesites plat[1] pursuant to the Land Division Act (LDA), MCL 560.221 *et seq*. MCL 560.221 provides that the "circuit court may, as provided in sections 222 to 229 vacate, correct, or revise all or a part of a recorded plat." "[T]o vacate, correct, or revise a recorded plat or any part of a recorded plat, a complaint shall be filed in the circuit court by the owner of a lot in the subdivision, a person of record claiming under the owner, or the governing body of the municipality in which

---

[1] Plat is defined as "a map or chart of a subdivision of land." MCL 560.102(a).

-2-

the subdivision covered by the plat is located." MCL 560.222. The complaint must set forth "(a) The part or parts, if any, sought to be vacated and any other correction or revision of the plat sought by the plaintiff," and "(b) The plaintiff's reasons for seeking the vacation, correction, or revision." MCL 560.223. Once plaintiff has asserted reasons for vacation of the plat, those objecting to the vacation have the burden of showing a reasonable objection to the request. *In re Petition of Gondek*, 69 Mich App 73, 74-77; 244 NW2d 361 (1976).

Thus, the vacation, correction, or revision of plats is controlled by the LDA. *Martin v Beldean*, 469 Mich 541, 542-543; 677 NW2d 312 (2004). "[T]he exclusive means available when seeking to vacate, correct, or revise a dedication in a recorded plat is a lawsuit filed pursuant to MCL 560.221 through 560.229." *Id*. However, "The LDA was never intended to enable a court to establish an otherwise nonexistent property right. Rather, the act allows a court to alter a plat to reflect property rights already in existence." *Tomecek v Bavas*, 482 Mich 484, 496; 759 NW2d 178 (2008); see also *Beach*, 489 Mich at 115.

In *Beach*, the dispute centered around platted roads which had never been developed. *Beach*, 489 Mich at 103-104. The Court held that an action pursuant to the LDA would not have been proper because the plaintiffs, lot owners in the plat, did not have a substantive property right. *Id*. at 110-111.

> Without possessing record title to the property, no one, including [the] plaintiffs, had a basis on which to request an alteration of the plat under the LDA. Therefore, plaintiffs were not required to proceed under MCL 560.221, which allows a circuit court to vacate, correct, or revise a plat but does not enable a court to establish an otherwise nonexistent property right. [*Id*. at 102 (citations, footnotes, and internal quotation marks omitted).]

Defendants rely on *Beach* to support their assertion that plaintiffs, who do not own record title to the park, had no basis to request vacation of the plat under the LDA. We agree with defendants, and hold, that pursuant to *Beach*, because plaintiffs do not have an existing property right in the park by way of record title they are unable to request that the trial court vacate the property.

Plaintiffs assert that the dedication of the park to lot owners in the subdivision, including plaintiffs, distinguishes the current case from *Beach*. It is true that in *Beach*, there was no private dedication, as there is here. Plaintiffs further rely on *Martin* and *Tomecek* to support their position, claiming that the current case is factually distinguishable from *Beach*. However, we disagree that *Martin* and *Tomecek* present similar factual circumstances to the current case. In *Martin*, the plaintiffs owned part of the lot that was in dispute. *Martin*, 469 Mich at 544-545. As such, the holding in *Martin* was consistent with *Beach* because the plaintiffs owned record title to part of the disputed property. In *Tomecek*, the case centered on the scope of an existing easement. *Tomecek*, 482 Mich at 487-494. In regard to the LDA, the Court only held that giving effect to an easement's purpose did not create new substantive property rights; the LDA was used in *Tomecek* as a tool to validate property rights which already existed. *Id*. at 495-496. We do not agree that *Tomecek* supports plaintiffs' position that they can seek vacation of the park, and, in fact, *Tomecek* seems to stand for the opposite proposition— that the LDA cannot be used to establish new substantive property rights. Pursuant to *Tomecek*, while plaintiffs could

use the LDA to define the scope of the dedication, discussed *infra*, they cannot create new property rights.

Moreover, even assuming plaintiffs were able to request that the property be vacated, we do not agree that the trial court clearly erred in finding that defendants showed a reasonable objection to the vacation. While plaintiffs are correct that there was no testimony regarding the impact on the value of the back-lot homes if the park were vacated, this Court has held that "a private dedication is effective upon the sale of a lot because it is reasonably assumed that the value of that lot, as enhanced by the dedication, is reflected in the sale price. That is, purchasers relied upon the dedications that made the property more desirable." *Little v Hirschman*, 469 Mich 553, 559; 677 NW2d 319 (2004). In further support, Jeri Hackenberry, lot owner in the subdivision, testified that the sole reason she purchased her home was the close access to the park, showing that the existence of the park is influential to buyers. For these reasons, the trial court did not clearly err in finding that "it seems reasonable and probable that the value of plaintiffs' property is less because of the location of the park and that the value to those non lake front property owners is increased because of their access to the lake through the park," and refusing to vacate the park.

Plaintiffs next argue that the trial court erred when it determined that snowmobile use was permitted in the park. We disagree.

"The extent of a party's right under an easement is a question of fact." *Dobie v Morrison*, 227 Mich App 536, 541; 575 NW2d 817 (1998). Accordingly, we review a trial court's determination of the parties' respective rights under an easement for clear error. *Id.* "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Chelsea Investment Group*, 288 Mich App at 251.

The intent of the grantor controls the scope of a private dedication. *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 88; 662 NW2d 387 (2003). When interpreting the scope of a private dedication creating an easement, courts must begin by examining the text of the dedication itself. *Little v Kin,* 468 Mich 699, 700; 664 NW2d 749 (2003). If the language of the dedication is plain and unambiguous the court must enforce it as written and no further inquiry is permitted. *Id.* However, "[i]f the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement." *Id.* Moreover, if the trial court concludes that the easement grants defendants a specific use of an easement, the court must determine (1) whether the use is necessary for the defendants' effective use of the easement and (2) whether the use unreasonably interferes with plaintiffs' use and enjoyment of their property. *Id*. at 701; see also *Dobie*, 227 Mich App at 541-542.

In this case, the plat of Shore Acres Homesites dedicated the park to the use of all present and future land owners in the subdivision. However, the specific use of the park was not defined. Therefore, the dedication was ambiguous and extrinsic evidence was permissible to determine the scope of the easement. *Little*, 468 Mich at 700. Here, both parties agree that under standard dictionary terms, a park is generally defined as an area of land used for recreation. Based on that definition, and the lack of other evidence regarding the dedicator's intent, the trial court did not clearly err in determining that the use of snowmobiles reasonably

falls within the scope of recreational activities, particularly in light of testimony that snowmobiles have been used in the park for many years.

Plaintiffs contend that historical snowmobile use in the park is not relevant to determination of the scope of the dedication. Plaintiffs rely on *Higgins*, where this Court considered the scope of a public dedication for use of road ends, and refused to consider the historical use of the public dedication to determine the scope of the dedication. *Higgins*, 255 Mich App at 88, 103. The Court held that "in the absence of evidence that the historical uses of the road ends were contemporaneous with the dedication, the road-end activity occurring *after* the dedication are not helpful in determining the dedicators' intent." *Id*. at 103 (emphasis in original).

In contrast, in *Dobie*, this Court considered a lakefront park dedicated to subdivision residents, which, according to the Court, was necessarily included in the plaintiffs' home owners' lot. *Dobie*, 227 Mich App at 537. The Court first considered whether the dedication granted subdivision residents fee title or an easement in the park by considering the subdivision plattors' intent. *Id*. at 538-540. In doing so, the Court explained that courts should consider "the language used in connection with the facts and circumstances existing at the time of the grant." *Id*. at 540. After determining that the park was an easement, the Court went on to hold that the trial court did not err in concluding that the defendant plat owners could continue to use the park as they had done "traditionally and historically" for picnicking, swimming, fishing, sunbathing, constructing a dock, and seasonal mooring, because the trial court properly found that such uses were within the scope of the easement and did not unreasonably interfere with the plaintiffs' use and enjoyment of their property. *Id*. at 541-542.

*Dobie* is more comparable to the current case than to *Higgins*. *Higgins* can be distinguished from the current case and from *Dobie* because it involved a public dedication as opposed to a private dedication. *Higgins*, 255 Mich App at 88; *Dobie*, 227 Mich App at 537. Here, as in *Dobie*, the parties did not present evidence regarding the use of the park at the time of dedication in 1924. Rather, several witnesses testified that since the 1970's, at least, the park had been used for snowmobiles. Given this testimony, and pursuant to *Dobie*, we are not left with a definite and firm conviction that the trial court erred in determining that snowmobile use fell within the scope of the dedication. See *Dobie*, 227 Mich App at 541-542.

Further, the testimony establishes that such a use is necessary to defendants' effective use of the park in the winter months, as the park is used for little else during that time. *Little*, 468 Mich at 701. We also do not agree that the use of snowmobiles unreasonably interferes with plaintiffs' use and enjoyment of their property. *Id*. The trial court ordered that plaintiffs could limit snowmobile use to daylight hours, which reasonably addresses one of plaintiffs' chief complaints regarding snowmobile use. Plaintiffs other main concern regarding snowmobile use was the proximity of the snowmobiles to their homes, and the fact that the snowmobiles may at times cross over the property lines. This issue could be solved by a fence, as suggested by the trial court. Therefore, we do not agree that use of snowmobiles in a reasonable manner interferes with plaintiffs' use and enjoyment of their property.

Affirmed.  Defendants, the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Karen M. Fort Hood
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell